ATKINSON *et al. v.* STATE.

[96 South. 310.   In Banc.   Nos. 23253, 23254.]

1. CRIMINAL LAW. *Where crime committed partly in two counties, jurisdiction in either county, but courts where prosecution first begun have right to conduct to final determination.*

Under section 1406, Code of 1906 (section 1161, Hemingway's Code), when a crime is committed partly in one county and partly in another, the jurisdiction is in either county, but the courts of the county where prosecution therefor is first begun are given the right to conduct the same to final determination, and the courts of the other county are thereby deprived of the right to entertain a prosecution for said crime.

2. CRIMINAL LAW. *Methods of commencing prosecutions stated.*

A prosecution may be commenced within the meaning of section 1406, Code of 1906 (Hemingway's Code, section 1161), by the issuance of a warrant, or by binding over or recognizing the defendant to compel his appearance at the circuit court to answer the defense, as well as by indictment or affidavit.

3. CRIMINAL LAW. *Charge against accused pending result of wound of deceased held sufficient to confer jurisdiction.*

Under section 1406, Code of 1906 (Hemingway's Code, section 1161), where the fatal wound was inflicted in one county and death resulted therefrom in another county, and in the interim of the infliction of such wound and the death of the decedent the defendant was arrested and incarcerated in prison on an affidavit before a justice of the peace of the county where the wound was inflicted charging him with assault and battery with intent to kill and murder the decedent, and under section 1461, Code of 1906 (Hemingway's Code, section 1219), where the defendant was at the time of the death of the decedent being held in custody under such charge to await the result of the wound inflicted, *held*, that such proceeding in the county where

the fatal wound was inflicted was such a beginning of a prosecution of the defendant for murder as gave the courts of said county exclusive jurisdiction to proceed with the same to final determination.

4. CRIMINAL LAW. *Statute providing for trial in either county of wound or death not violative of Constitution, guaranteeing jury trial where offense committed.*

Section 1407, Code of 1906 (section 1162, Hemingway's Code), providing that, where the mortal wound or other cause of death is inflicted in one county, and death occurs in another county, the offender may be indicted and tried in either county is not violative of that clause of section 26 of the Constitution, which guarantees to a defendant charged with crime a trial before a jury of the county where the offense was committed.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Jeff Atkinson was convicted of manslaughter, and Will Atkinson was convicted of murder, and both defendants appeal. Reversed and remanded, with directions.

*George S. Hamilton,* for appellant.

Two questions are presented to the court in this case for decision: First. Does section 1407 of the Code of 1906 violate section 26 of the Constitution of Mississippi? In other words, did the trial of Will Atkinson in the circuit court of Hinds county deprive him of his constitutional right to be tried by a "jury of the county where the offense was committed?" Second. Was the prosecution of Will Atkinson first begun in Leake county?

We shall discuss the first question first. Section 26 of the Constitution provides that in all criminal prosecutions, the accused shall have a right to a trial by a "jury of the county where the offense was committed." The question in this case is, where was the crime committed? And that is a matter of fact. If the crime was committed in Leake county, then the court of Hinds county had no jurisdiction.

Every crime is composed of two separate and distinct elements; namely, the criminal act and the criminal intent. Where these two elements concur, we submit the crime is there committed. The criminal act that was done was the shooting, the infliction of the mortal wound, and that took place in Leake county. The criminal intent that existed was in the mind of Will Atkinson at the time he did the shooting, and that was where he was, in Leake county.

There are a number of murder cases reported by the courts of different states, in which the mortal wound was inflicted in one state, and death resulted in another state. In many of these states there were no statutes on the subject, and it therefore became necessary for each court to determine in which state the crime was committed in order to determine the question of jurisdiction. For a state could not prosecute for murder unless the murder was committed in that state.

In this case, now before this court, if Leake county and Hinds county are considered, for the purpose of argument in this case, as constituting different states, the reasoning applicable in those cases apply equally in this case. And if those cases decided that, in the absence of statute, the crime of murder is committed in the state where the mortal wound was inflicted, and not in the state where death occurred, they constitute authority, by analogy, for the proposition that in this case the crime of murder was committed in Leake county, where the mortal wound was inflicted, and not in Hinds county, where death resulted.

And the analogy is complete and perfect. Under the constitution and laws of this state, each county, so far as crimes and criminal prosecutions are concerned, constitutes a separate and distinct jurisdiction.

In *Kentucky* v. *Atkins,* 148 Ky. 207, 146 S. W. 431, the defendant was indicted in Kentucky for the murder of the decedent by administering poison to her and also by striking her. The blow was struck and the poison was administered by the defendant in Cincinnati, Ohio. Death

occurred within a year and a day in Kentucky. Thus the Kentucky court held that the murder was not committed in Kentucky, where death occurred, and that the state of Kentucky had no jurisdiction over the crime; but that it occurred in the state of Ohio, where the poison was administered and the blow struck, and that only the Ohio courts had jurisdiction.

Following the analogy, we submit that the crime of murder, in this case, was not committed in Hinds county, where death occurred, and that the circuit court of Hinds county had no jurisdiction to try the case; but that the crime was committed in Leake county, where the shooting occurred and the mortal wound was inflicted. *Stout* v. *State,* 76 Md. 317, 25 Atl. 299.

And the same conclusion is reached in *State* v. *Bowen,* 16 Kan. 475.; *Green* v. *State,* 66 Ala. 40; *State* v. *Kelly,* 76 Me. 331; *Riley* v. *State,* 9 Humph. 646. We submit that from an examination of those cases in which a particular crime is considered as committed partly in one county and partly in another, it will appear that the active agency of the perpetrator was employed in each county.

Section 1406, Code of 1906, is the section referring to crimes committed partly in one county and partly in another. That section evidently applies to such crimes generally, but not to murder. There is a separate section, section 1407, in regard to murder. The legislature evidently considered that the first section did not cover murder, and that it was necessary to enact the second section in order to cover that crime, because murder could not be regarded as being committed partly in two counties where the wound was inflicted in one and death ensued in another. We now come to the second question, presented to this court for decision, which we consider equally, if not the more important of the two. If the court should be of the opinion that the crime of murder is committed partly in each county where the wound is inflicted in one county and death ensues in another, then we submit that under section 1406, Code of 1906, prosecution was first

begun in Leake county, and therefore that Leake county alone has jurisdiction.

We wish to call the court's attention to the following sections of the Code of 1906 (section 1461); section 2753 (section 1415). It was then agreed between the county prosecuting attorney of Leake county' and Mr. James Crawley, attorney for Will and Jeff Atkinson, that these cases then pending before the justice of the peace should stand continued until it could be determined whether Joe Owen was going to recover or die. Meanwhile the injured party was brought to Jackson, in Hinds county, to a hospital here for treatment, and while here, later died. The night of his death affidavits were made against Will and Jeff Atkinson before a justice of the peace of Hinds county charging them with murder, while the cases were still pending before the justice of the peace in Leake county. After the affidavits had been made in Hinds county, the prosecuting attorney of Leake county directed the justice of the peace there to dismiss the charges there, without notice to the attorney for Will and Jeff Atkinson. *State* v. *Hughes,* 51 So. 464, 96 Miss. 581, is such an important case that we wish to call it to the special attention of the court.

The question in this case was practically settled by the case of *Coleman* v. *State,* 83 Miss. 290, 35 So. 837, 64 L. R. A. 807. In this case, the affidavit was made in Leake county before a justice of the peace there, a warrant was issued thereon, and Atkinson was taken and held in custody by the Leake county sheriff. What is a prosecution and what is meant by the word? Black's Law Dictionary defines it as follows: "Prosecution. In criminal law, a criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime."

A prosecution is a criminal action. It is the action that constitutes the prosecution. Prosecution is of a person. It is for a crime. The main idea conveyed by the word is the criminal action instituted against a person.

Criminal action was begun against Atkinson the very day the shooting occurred. An affidavit was immediately made, charging him with assault and battery with intent to kill and murder. A warrant was issued thereon for his arrest, and he was arrested. That was the beginning of the prosecution in this case. It is difficult to see how it could have begun otherwise, under the circumstances.

In allowing the case to stand continued until it could be determined whether or not Owen would recover, the justice of the peace did the proper thing. It was his duty not to proceed until that could be determined. Section 1461, Code 1906. After Owen died, if the case had proceeded in an orderly manner before the justice of the peace, and it had developed in the trial that the wound resulted in death, and that Atkinson was probably guilty of murder, it would have been the duty of the justice of the peace to bind him over to the grand jury of Leake county, to answer a charge of murder. Section 1534, Code 1906.

We respectfully submit that the plea in abatement filed in this case in the circuit court of Hinds county was well taken and ought to be sustained; and that, by reason of either the first or the second proposition presented to this court for decision, this case should be reversed and remanded.

*D. H. Glass,* for appellant.

There are only two questions presented in this case for review by this court. The first question is: whether or not section 1407 of Code 1906, is in violation of section 26 of the Constitution of Mississippi. The second question is: Whether or not the lodgment of an affidavit charging appellant with shooting with the intent to kill, and the issuance of a warrant and his subsequent arrest thereon, and confinement in jail awaiting the outcome of the wounds of the injured person constitutes the commencement of the prosecution in this case.

The Constitution of Mississippi, known as the declaration of rights, adopted in 1832 contains the same provision as the Constitution of 1890, section 26. The first statute corresponding to section 1407, Code of 1906, is found on page 613 of Mississippi Code of 1857.

There has never been a decision handed down by this court on the constitutionality of section 1407, Code 1906, notwithstanding the fact that this section has been on our statute books since 1857, and that our Constitution in regard to the venue of criminal cases has been practically unchanged since 1832. There are only two cases in Mississippi, as far as the writer can ascertain which have any bearing whatsoever on the constitutional provisions named above, and the statutes above named. In the case of the *State* v. *Cunningham,* 59 So. 76, Chief Justice MAYES touched somewhat upon section 26 of our state Constitution. In the above case, Cunningham was arrested and tried in Tunica county, Mississippi, on a charge of bootlegging. The proof showed that Cunningham was west of the middle of the channel of the Mississippi River, on the Arkansas side when arrested. The trial court discharged Cunningham for the reason that the crime was not committed within the jurisdiction of Tunica county. The state prosecuted an appeal from the decision of the learned trial court and this court reversed the decision of the trial court for the reason that the Congress of the United States had passed a resolution authorizing the states of Mississippi and Arkansas to pass whatever legislation was necessary concerning the criminal jurisdiction of offenses committed on the Mississippi River between said states. On the 12th day of April, 1910, the legislature of Mississippi passed an act providing that the criminal jurisdiction of Mississippi should extend to the Western bank of the Mississippi River on the Arkansas side, and section of said act provides: "That the counties of Mississippi lying immediately on the Mississippi River shall respectively have and possess criminal jurisdiction within the territory embraced by extending their bound-

ary lines which strikes said River on a continuous and direct course to the extreme western bank of said River." The above statute clearly extended the jurisdiction of Tunica county so as to take in that portion of the River where Cunningham was arrested. This act of the legislature was authorized by an act of Congress and of course its validity cannot be assailed. The court in delivering this opinion in said case said: "But it is argued that section 26 of the Constitution of the state of Mississippi guarantees to each person a speedy and public trial by an impartial jury of the county where the offense was committed," and to allow this prosecution to proceed in the state of Mississippi when the offense was committed in Arkansas would be in violation of the Constitution by allowing the state to prosecute in a county other than the one in which the offense was committed. The answer is that the Act of 1910, expressly extends the counties of Mississippi lying immediately on the Mississippi River, so as to give them criminal jurisdiction within the territory embraced by extending their boundary lines in a continuous and direct course to the extreme western bank of said River where it touches the state of Arkansas. In other words, the county limit is coextensive immediately in front of it, with the jurisdiction given the state of Mississippi, insofar as these prosecutions are concerned.

It can be readily seen that this court in the above case fully recognized that the trial of all criminal cases must be in the county where the offense was committed, and this being true it follows as night would follow day that any statute which attempts to change this direct mandate of the organic law of this state would be in violation of section 26 of the Constitution and thereby be null and void.

The other case in question is *Coleman* v. *State,* 83 Miss. 290, appealed from the circuit court of Coahoma county, Mississippi, for the commencement of the prosecution was begun in Leake county immediately after the shooting affray, and appellant was arrested and placed in jail to

await the outcome of the wounds of the injured party. This to my mind, is plainly a manifestation of an anticipated charge of murder. If this were not so, why was not appellant allowed bail, and why was he forced to remain in jail until Owen's condition was determined? If Coleman, in the case cited above should have been tried in Quitman county, because an indictment was first lodged against him in Quitman county, then why should not appellant have been tried in Leake county where the charge was first lodged against him? The cases are analogous in this; Coleman was charged with a lesser crime in Quitman county, namely, manslaughter, than he was in Coahoma county where he was charged with murder. Appellant Atkinson was charged with a lesser crime, namely, shooting with intent to kill and murder, in Leake county, and murder in Hinds county. If it was correct for Coleman to have had his prosecution entirely in Quitman county because it was first started there, then it follows that appellant Atkinson should have been entitled to have had his prosecution entirely in Leake county because it was first started there.

There are numerous decisions of supreme courts of numerous states bearing on questions identical with the ones herein involved. *Green* v. *State,* 66 Ala. 40; *Dugan* v. *State,* 30 Ark. 41. In the case found in Volume 21, page 396, of the state of Minnesota, the court holds that the giving of the mortal blow which caused the death constitutes the felony.

In *The State* v. *McGraw,* 87 Mo. 161, the same constitutional provision as section 26 of our Constitution and a statute similar to the statute here in question in our state was involved. The courts held that the statute was unconstitutional as the crime of burglary could not be prosecuted in any other county than the one in which the crime was committed. State of Washington, See Vol. 55, page 588, Washington Reports.

In the Constitution of Mississippi, section 26 thereof, follows very nearly article 6 of the United States Consti-

tution. It has been expressly held that the provision of article 6 of U. S. Constitution, applied only to federal proceedings, hence it became necessary for the different states of the Union to adopt provisions in their respective constitutions governing the jurisdiction of criminal cases in state courts. About twenty-six states of the Union have adopted similar provisions to that adopted by our own state and in a great many of these states there has been undertaken the enactment of similar statutes to section 1407 of the Code of Mississippi of 1906, and in every instance with possibly two exceptions whenever the question of the constitutionality of these statutes has been raised, the statutes have been declared unconstitutional. Such is true in West Virginia, in *State* v. *Lowe,* 21 W. Va. 786; *Green* v. *State,* 66 Ala. 41; *State* v. *McCoomer,* 79 S. C. 63; *Moran* v. *Territory of Oklahoma,* 16 Okla. 544; *Armstrong et al.* v. *State* (Tenn.), 1 Cold. 342.

It may be argued by the state that in order for the crime of murder to be complete, that death must ensue after the mortal conflict, and this no doubt is true in one respect and that is that death must be proven to constitute the offense of murder when coupled with the other necessary elements of the crime. But the death is merely the result of the mortal blow as has been very aptly held only reverts back to and determines the degree of the offense committed at the time of the conflict in which the deceased received injuries from which he afterwards died.

The state, through its able counsel, has failed to cite any authority which would go to uphold its contention that section 1407 of Code of 1906, is constitutional; the state has also failed to show any conclusive authority to the effect that the criminal jurisdiction of murder rests in the county with the constitutional provision alike, or similar, to section 26 of the Constitution of our state. On the other hand there will be found any number of court decisions handed down by recognized jurists sustaining the contention of appellant that Leake county, Mississippi, is the only county in which he can be legally tried for the murder of Joe Owen.

In the Cunningham case cited above, the court intimated that accused could only be tried in the county where the offense was committed, meaning within the territorial jurisdiction of said county. In the Coleman case cited above, the court held that the county first acquiring jurisdiction of an offense, retained jurisdiction thereof.

Under either of the above cases, as well as numerous cases from other states touching the same subject-matter, it is the contention of appellant herein that the circuit court of the first judicial district of Hinds county, Mississippi, was wholly and completely without jurisdiction to try him for the murder of Joe Owen for the reason that section 1407 of the Code of 1906 is in violation of section 26 of the Constitution of Mississippi and further that Leake county, Mississippi, first acquired jurisdiction of the offense of shooting Joe Owen, which shooting resulted in the death of said Joe Owen, and for these reasons and other reasons to be assigned in the oral argument hereof, the appellant respectfully asks that this case be reversed and remanded.

*James T. Crawley,* for appellant.

By section twenty-six of the Constitution of the state of Mississippi, the fundamental law of the land, every person, charged with a crime, is guaranteed a fair and impartial trial by a jury of the county where the offense is committed. Section 1406, Mississippi Code of 1906, reads as follows, to-wit: 1406. The same: Offenses committed partly in one county and partly in another, etc. Where an offense is committed partly in one county, and partly another, or where the acts, effects, means or agency occurred in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun.

Section 1407, Mississippi Code of 1906, reads as follows to-wit: 1407. The same: Mortal blow in one jurisdiction,

death in another. Where the mortal stroke or cause of death occurs or is given or administered in one county and the death occurs in another county. the offender may be indicted and tried in either county; and so if the mortal stroke or cause of death occur or be given or administered in another state or county, and the death happens in this state, the offender may be indicted and tried in the county in which the death happened.

From the very earliest times, in fact since the establishment of the jury system by the English race of people, it has been the universal practice and custom to give a defendant, as nearly as possible, a fair and impartial trial by a jury of his peers, of the county where the offense was committed.

In 8 R. C. L. page 99, it is said "Criminal Law, sec. 59. Statutory authority to prosecute in another county or district." (a) But under a constitutional provision that the defendant is entitled to a trial by a jury of the county in which the offense is committed, the accepted rule is that a statute giving jurisdiction of a prosecution to the courts of another county is void (9 American and English Annotated Cases, page 605.)

In L. R. A., Book 34, page 851, we find the case of *Andrew Debney, Plaintiff in Error* v. *State of Nebraska,* in which case it is held that the crime of murder is regarded as having been committed at the time when the fatal blow or wound was inflicted, although the death occurred on a subsequent. date. *Stout* v. *State,* 76 Maryland 317, L. R. A. 851; *People* v. *McGill,* 6 Cal. 637; *Commonwealth* v. *Apkins,* 148 Ky. Reports, 207.

It did not take but few words for the court, in this case, to decide that the party on trial was entitled to, and must be tried, if tried at all, in the county where the offense actually took place. See 55 Washington, 588, 104 Pac. 814; *Green* v. *State,* 66 Ala. 44, et seq.

In *Ex Parte Slater,* 72 Mo. 102, a very similar question was raised. The offense was committed in one county, and the indictment returned in another. Section 22, article

2 of the Constitution provided for a trial in the county in which the offense occurred, or was committed. The court in this case said: "These constitutional provisions secure to the citizens charged with a felony, first the right to have the charge preferred by indictment, before he can be tried; and second, the right after the indictment, to a speedy public trial by an impartial jury of the county."

This decision was followed by later cases in Missouri, among which are: *State* v. *McGraw,* 87 Mo. 161; *State* v. *Hatch,* 91 Mo. 568; *Osborn* v. *State,* 24 Ark. 629; *State* v. *Blunt,* 110 Mo. 322, 19 S. W. 650; 110 Mo., supra, on page 337; *Wheeler* v. *State,* 24 Wis. 52.

The point in question is further considered in *State* v. *Kelly,* 76 Main Reports 331, et seq.; *State* v. *Bowen,* 16 Kansas, 475; *State* v. *Carter,* 27 N. J. Law Reports, 449, et seq.; *McNeely's Case,* 36 W. Va. 84, et seq.; *Green* v. *State,* 66 Ala. —; *State* v. *Gessert,* 21 Minn. 369; *Manly Loyds* v. *State,* 6 Okla. Cr. Rep. 83.

And it has been held under the Ohio Revised Statutes, par. 37, that it is not the place of the death, but the place where criminal act is perpetrated or consummated to which the jurisdiction to try the case is given. 9 Humphreys (Tenn.) page 646; 1 Mackey 537, et seq.; *Guiteau* v. *United States,* on page 544, et seq.

In *Coleman* v. *State,* 83 Miss. 290, 35 So. 937, and which counsel for the state may rely upon before this court to argue that these statutes have been upheld, and are therefore constitutional, the court held that—If one accused of murder is indicted in the county where the death occurred, he cannot afterwards be indicted in another county, where the mortal blow was struck, although the first indictment had been dismissed by the state, since this section provides in such cases that the jurisdiction shall be in either county where the prosecution shall be first begun.

For these reasons, therefore, advanced by all the leading authorities herein cited, and for the further reasons assigned by me, I respectfully submit to your Honors that the crime of manslaughter or murder in this case, if com-

mitted at all, was committed at the place where the de-
ceased was mortally wounded, to-wit, in Leake county,
Mississippi, and that the subsequent death of Mr. Owens
in Hinds county, Mississippi, was no constituent part of
the crime committed, but was merely the consequence or
effect of the mortal blow, and only referred back to the
original felonious assault, making the same felonious hom-
icide instead of felonious assault. And that, therefore, this
being true, Hinds county, Mississippi, was without juris-
diction, *ab initio,* and that all proceedings had in connec-
tion with the case, in the lower court are a nullity, and of
no force and effect. This being true, the defendant should
be discharged on the Hinds county, Mississippi, indict-
ment, and remanded into the custody of the sheriff of
Leake county, Mississippi, there to remain to await the
action of the grand jury of Leake county, Mississippi.

*Clayton D. Potter* and *J. A. Teat,* for appellee.

It will be noted throughout counsel's brief that while
he cites a great many cases sustaining prosecution in the
county where the blow was struck, he does not cite a single
case declaring that such statute as the one now under
consideration, has been declared void, although similar
statutes have been enacted by a large number of the states.
So far as we have been able to find, the courts have uni-
formly sustained such statutes as not being violative of
a state constitution providing that the accused shall be en-
titled to a trial in the county where the crime occurred.

Discussing the cases cited by counsel in his brief, they
fall under one of two general heads: First, that the time
of the murder relates back to the date of the fatal blow;
and second, that the county where the fatal blow was struck
has jurisdiction to try the accused. It is true that in a
large number of cases it is stated that the death is the
consequence of the act, and that therefore the state has
a right to prosecute in any county where the mortal blow
was struck, yet this is a very different question to the

declaring that where legislation has been enacted to that end, that the state has not the right to prosecute in the county where the death occurred because of constitutional provisions as here urged.

Although there seems to be authority to the contrary, we take it that it will be generally conceded, that at the early common law where the blow was struck in one county and the death occurred in another, there was at least grave doubt as to the right to prosecute the accused in either county.

To remove this doubt the statutes of two and three, Edward the Fourth, chapter 24, were passed, giving jurisdiction in such cases to try the murder in the county where the death occurred. Such was the Mississippi statute up to the Code of 1892. It was held in the case of *State* v. *Blunt,* 110 Mo. 322, 19 S. W. 650, that the statute of Edward the Fourth was of such antiquity as to be a part of the common law in this country. If this, is the case, then in the absence of any statute to the contrary, the only place where a murder could be tried, is in the county where the death occurred.

Since Mississippi has been a state our Constitution has, in the Bill of Rights contained a similar provision as now under review. Yet from the earliest statute to the Code of 1892, the uniform law in Mississippi has been that the murder could only be tried in the county where the death occurred. We thus have the contemporaneous construction by the legislative department of the Government for seventy-five years, that section 26 does not prohibit a trial in the county where the death occurs and this contemporaneous construction is at least entitled to great weight by this court.

It was decided in the case of *Stoughton* v. *State,* 13 S. & M. 255, that at the common law the accused could not be tried in the county where the blow was struck and this case was followed by the case of *Turner* v. *State,* 28 Miss 686. The last case on this subject from our own court is that of *Coleman* v. *State,* 83 Miss. 290, 35 So. 937; 64 L. R.

A. 807. In the *Coleman case, supra,* it was especially decided by our court that the crime of murder, where the fatal blow was struck in one county and death ocurred in another, is not wholly completed in either county but partly in each.

It will be noted in the Coleman case that Coleman shot his wife in Coahoma county and that death occurred in Quitman county and because the prosecution was first begun in Quitman county the court held that Quitman county, the county where the death occurred, had exclusive jurisdiction to try the case.

While it is true that in none of these Mississippi cases the constitutional question was raised, yet this question being one of jurisdiction of a cause it therefore becomes authority direct and binding, that the court possesses the necessary jurisdiction without the question being raised by counsel. It is therefore apparent that in the three above-mentioned cases our court has in effect declared that a trial in the county where the death occurs does not violate section 26 of the Constitution of Mississippi.

Cases from other jurisdictions. The earliest case on this subject that we have been able to find is that of *Commonwealth* v. *Parker,* 2 Pick. 550. In this case it was decided that a statute providing that where the cause of death occurs in one county and death in another, an indictment may be found in the latter, is not repugnant to a declaration in the Constitution that in criminal prosecution the verification of facts in the vicinity where they happened is one of the greatest securities of the life, liberty and property of the citizen. *State* v. *Paule,* 12 Wis. 537.

This same question was decided in the case of *Smith* v. *Florida,* 42 Fla. 605, where the court sustained a similar statute to the one in question. *State* v. *Paule,* 12 Wis. 537; *Commonwealth* v. *Parker,* 2 Pick. 549; see also *Archer* v. *State,* 106 Ind. 426, 7 N. E. 225; *Hank* v. *State,* 148 Ind. 238, 46 N. E. 127. Corpus Juris also states that such statutes are free from constitutional defects, such

as the one here urged. 16 C. J. 191, par. 275. See also *Massey* v. *State*, 90 Ky. 485; *Hargis* v. *Parker*, 85 S. W. 704, 27 Ky. L. Rep. 441, 69 L. R. A. 270; *Archer* v. *State*, 7 N. E. 225, 106 Inc. 426.

We therefore find that in every jurisdiction where this matter has been directly considered, each court which has considered the same, has concurred in holding such statute to be free from the constitutional objections urged. We therefore have the contemporaneous construction by the legislative department for a period of seventy-five years, the unbroken line of authorities and every logical reason to sustain the constitutionality of section 1407 of the Code of 1906, and therefore to affirm the case.

ANDERSON, J., delivered the opinion of the court.

Appellants, Jeff Atkinson and Will Atkinson, were indicted in the circuit court, First district, Hinds county, for the murder of Joe Owens. Will Atkinson was convicted of murder and sentenced to the penitentiary for life. Jeff Atkinson was convicted of manslaughter and sentenced to the penitentiary for ten years. From these judgments they prosecute appeals to this court, which will be considered together.

Appellant interposed a plea to the jurisdiction of the court which was overruled. This action of the court is assigned for error.

The wound of which the deceased, Owens died was inflicted in Leake county. Owens was brought from that county to the first district of Hinds county. Soon after the wound was inflicted from which Owens died affidavits were made before a justice of the peace of Leake county charging appellants with an assault and battery upon him with a shotgun, a deadly weapon, with intent to kill and murder. Upon such affidavits warrants were issued for the arrest of appellants, who were accordingly arrested by the sheriff of Leake county and placed in jail in that county. Owens was brought from there to the

Baptist Hospital, Jackson, First district of Hinds county, and there died. After the arrest and incarceration of appellants in Leake county it was agreed by the prosecuting attorney of that county and the attorney for the appellants that the cases then pending before the justice of the peace of Leake county should stand continued to await the result of the wound received by Owens. The matter thus stood at the time of the death of Owens; no further action having been taken in said prosecutions begun in Leake county. Immediately upon the death of Owens in the First district of Hinds county affidavits were made against appellants before a justice of the peace in that district charging them with his murder. After the institution of this prosecution in the First district of Hinds county the said prosecution begun in Leake county was dismissed by the county attorney of that county without any agreement to that effect with appellants or their attorney.

It is contended that the circuit court of the First district of Hinds county was without jurisdiction because the courts of Leake county had first acquired jurisdiction by virtue of the prosecution there begun as above set out. Appellants rely upon section 1407, Code of 1906 (Hemingway's Code, section 1162), which provides, among other things, that where the mortal wound or other cause of death is inflicted in one county, and death occurs in another county, the offender may be indicted and tried in either county, and section 1406, Code of 1906 (Hemingway's Code, section 1161), which is in this language:

"When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun."

It will be observed that the latter statute provides, in substance, that when a crime is committed partly in one county and partly in another, the jurisdiction shall be

in either county, but the courts of that county where prosecution for such crime was first begun shall have the right to conduct the same to a final determination. The question therefore is whether the prosecution begun before the justice of the peace in Leake county which was pending until after the death of Owens was such a beginning of a prosecution for said offense as gave the courts of that county exclusive jurisdiction to proceed to a final judgment.

As it appears to the court this question is answered in the affirmative by the cases of *Coleman* v. *State,* 83 Miss. 290, 35 So. 939, 64 L. R. A. 807, 1 Ann. Cas. 406, and *State* v. *Hughes,* 96 Miss. 581, 51 So. 464.

It is contended on behalf of the state, however, that those cases are not decisive of the question here involved, because in each of those cases the crime charged had been entirely consummated when the first prosecution was begun, while in the case before the court the state says that the crime had not been completed until the death of Owens, which took place in the First district of Hinds county, and that therefore no prosecution for said crime could have been begun prior to that time in Leake county; in other words, that the prosecution begun in Leake county was not one for murder, but for a lesser offense, viz., shooting with intent to kill and murder, and therefore it was not the commencement of a prosecution in the meaning of said statute.

We hold, however, that the proceeding begun in Leake county was the beginning of a prosecution within the meaning of said section 1406, Code of 1906 (Hemingway's Code, section 1161), for the following reasons: It should be borne in mind that the fatal wound which resulted in Owens' death had already been inflicted when the proceeding in Leake county was begun. The criminal act had already been consummated. So far as appellants were concerned, they had done all they ever did do to perpetrate the crime. Section 1534, Code of 1906 (Hemingway's Code, section 1296), prescribes the duties of conservators

of the peace in criminal cases. Section 1461, Code of
1906 (Hemingway's Code, section 1219), provides in sub-
stance that, if a person be dangerously wounded, the ac-
cused shall be committed to jail until it be known wheth-
er the wounded person will recover or not, unless it ap-
pear to the court of inquiry that in any event the crime
would not amount to murder. Section 2753, Code of
1906 (Hemingway's Code, section 2252), provides that,
if on the trial of a criminal case the justice of the peace
discover it is a felony of which the accused is probably
guilty, instead of a misdemeanor, he shall not render a
final judgment, but shall require the accused to give bail
for his appearance in the circuit court unless it be a
felony which is not bailable, in which case it shall be the
duty of the justice of the peace to commit the accused
without bail.

It was held in *Ex parte Burke,* 58 Miss. 50, that an af-
fidavit charging a crime serves to procure the arrest of
the accused, and, if the justice of the peace believe him
guilty of a felony, he must bind him over, and the *mitimus*
will be valid, although the affidavit before the justice of
the peace only charge a misdemeanor. And it was held
in *Ex parte Smith,* 79 Miss. 373, 30 So. 710, that where
a defendant is charged with an assault and battery, and
it appears that the death of the injured party resulted
from defendant's blows, it is not improper, but it is the
duty of the justice of the peace, to bind the defendant over
to await the action of the grand jury. In *State* v. *Hughes,*
*supra,* in discussing what constituted the beginning of
a prosecution for crime, the court said:

"The policy of our statute in regard to this is clearly
outlined in section 1415, Code of 1906."

Section 1415, Code of 1906 (Hemingway's Code, sec-
tion 1171), prescribes what shall constitute the begin-
ning of a prosecution so as to stop the statute of limita-
tions applying to criminal offenses, and is in this lan-
guage:

"A prosecution may be commenced, within the meaning of the last preceding section, by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit."

We have here therefore a case where the fatal wound had been inflicted in Leake county, and a prosecution begun in that county which was pending when the wounded man died in Hinds county, which prosecution the justice of the peace before whom it was pending had the right under the law, on learning of the death of said decedent, without any amendment to the affidavit already on file, or the making of a new affidavit charging murder, to proceed therewith, and to bind appellants over on the charge of murder to await the action of the grand jury of that county. A prosecution had been begun in Leake county for the unlawful shooting of Owens, and this gave the courts of that county the exclusive jurisdiction of the crimes of manslaughter and murder resulting therefrom.

Section 26, Constitution of 1890, provides, among other things, that a defendant charged with crime shall be tried in the county where the offense was committed. Section 1407, Code of 1905 (Hemingway's Code, section 1162), is not violative of this constitutional provision because at common law there was much confusion on this subject in the decisions of the courts—so much in fact that it was unsettled whether the *situs* of the jurisdiction of the crime of murder was in the county where the mortal wound was inflicted or in the county where the death occurred. Some of the English courts held that the crime occurred in one county and some in the other; and some held that the offender was not indictable in either county. To remedy this condition the Statute of Edward VI was passed, which made the offense triable in the county where the death occurred. That it was competent for the legislature to provide for the trial of the offense either in the county where the wound was inflicted or the death occurred is set at rest, we think, by *Stoughton* v. *State,* 13 Smedes & M. 255. The court said in that case:

"The case must turn on a different point. The wound was inflicted in Perry county, where the prisoner was indicted, but death occurred in Harrison county. In such cases there is an express statutory provision requiring that the indictment should be found in the county where the death occurs. Poindexter's Code, 314. This statute seems to have been overlooked in the subsequent compilations, though it is not repealed; at least we have found no act repealing it. It simply provides that the indictment, found in the county in which the death may happen, shall be good and valid in law. The better opinion seems to have been that by the common law, when the blow was given in one county, and the death happened in another, the offender was not indictable in either. This, however, was a point that gave rise to doubts. The difficulty was obviated by the Statute of Edward VI, which made the offense triable in the county where the death happened. Our statute was passed with the same object. It does not, it is true, say the prisoner shall not be tried in the county where the stroke was given; and if it could be clearly shown that he was triable there by the common law, perhaps the statute might be regarded as giving the additional power to try him in the county where the death happened, without interfering with the jurisdiction as at common law. But as the question was, to say the least of it, doubtful at common law, the statute must be regarded as the only law on the subject."

Indictments quashed, and cases reversed and remanded, and appellants ordered held to await the action of the grand jury of Leake county.

*Reversed and remanded.*

HOLDEN, J. (dissenting).

It is with reluctance that I put my judgment against that of the majority of my brethren in any case, because I have been here long enough to realize my limitations and to appreciate the judicial ability of my associates,

but I cannot refrain from recording my dissent in some cases, such as the one before us, where it seems plain that the majority have an erroneous view of the law of the case.

I shall not enter into a full discussion of my dissenting conclusions in this case, for the reason that it is doubtful if a dissenting opinion ever proves of any value in the adjudication of the case, since such dissent cannot be used as a precedent, and can have no effect upon the decision of the majority, unless in some instances it may tend to weaken or cause less respect for the rule laid down by the court.

However, in the instant case I think the majority opinion is wrong in this particular, viz.: The prosecution for the completed offense of murder was first begun in Hinds county by an indictment of the grand jury, and was never started in Leake county at all. The affidavit filed before the justice of the peace in Leake county did not charge murder, because the death necessary to make the offense murder had not occurred at the time of the filing of the affidavit, but took place, and completed the offense of murder, subsequently in Hinds county, where the indictment was found and the conviction had. The filing of an affidavit before a magistrate which only charged assault and battery with intent to kill is not, in my judgment, the beginning of a prosecution for the crime of murder. Such a proceeding is in the nature of an examining trial upon a different charge than that of murder. The offense of murder may never come into existence because the wounded party may not die. If the affidavit in Leake county had charged murder, then the prosecution for murder would have first begun in that county, but the affidavit here only charged a lesser offense and could not charge murder until the death ensued in Hinds county.

Originally the jurisdiction for the trial of murder was solely in the county where the death occurred, but under the statute now either county is given jurisdiction, and,

where the prosecution is begun in one county for the completed offense, that county has sole jurisdiction. Now it will be apparent that in practically all cases where the wound is inflicted in one county and the death occurs in another some person will make the charge of assault immediately in the county where the wound was inflicted, and, if the majority opinion is correct then it would be a rare case where the court would obtain jurisdiction in the county where the death takes place.

I think the statute contemplates sole jurisdiction in the county where the prosecution first begins for the consummated offense of murder or homicide, and not in the county where the justice of the peace charges the offender with a different offense. The practice is well known to the bar that in such a case the justice of the peace requires a new affidavit for murder when the assaulted party dies. And I believe that, if this affidavit charging murder is first made in the county where the wound was inflicted, then the sole jurisdiction would be in that county. But that is not the case before us now.

The authorities cited by the majority opinion to support the rule announced are not applicable for the reason that in each of those cases the offense charged had been completed when the affidavit or indictment was made against the offender. For instance, in the Coleman case, cited by the majority, the indictment there was for the killing, or the homicide, which was the completed offense, and it was held that the county where the indictment for the homicide was returned had the sole jurisdiction. And in the Hughes case cited the offense there was embezzlement; the crime having been completed at the time the prosecution began before the justice of the peace. The difference in those cases and this one, as I see it, is that the offense of murder here was not complete, or, I will say, had not been committed, at the time the affidavit was filed for investigation of a different offense, to-wit, assault, etc., in Leake county.

It seems to me the correct rule is and ought to be established that the sole jurisdiction for the trial of murder or manslaughter shall be in the county where the charge for such offense is first made, which in this case was Hinds county. If the filing of a charge before some inferior officer in the county where the wound is inflicted which may never result in death is held to be the commencement of the prosecution for the death which afterwards occurs in another county, then the result would be a foot race between the enemies and the friends of the deceased and the offender to find a convenient officer to secure jurisdiction where the respective parties think that they may have more advantages in the final trial. This confusion and possible impairment of the administration of justice should be avoided by laying down a safe and certain rule for guidance in such cases.

I respectfully invite a reading of the cases and statutes cited in the majority opinion, which I think will appear convincing that none of them hold that the prosecution is commenced for murder, the completed offense, by filing an affidavit charging the assault which afterwards develops into a homicide.

ETHRIDGE, J. (dissenting).

I am unable to concur with the majority opinion in this case for the following reasons:

First, because section 26, Constitution of 1890, provides, among other things: "And, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed."

Section 1406, Code of 1906 (Hemingway's Code, section 1161), relied on in the majority opinion, provides that:

"When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense

was commenced, prosecuted, or consummated, where prosecution shall be first begun."

This statute was first enacted subsequent to the enactment of the Constitution of 1890, and in my opinion the Constitution, being the supreme law, fixes the venue or jurisdiction where the offense is committed as that term was known and understood at the date the Constitution was enacted. And, as I understand the decisions of this state, the jurisdiction was in such cases in the county where the death occurred in cases of murder or where the homicide was charged. The offense is committed in one county. It is not competent for the legislature to enlarge upon the Constitution; for, where the Constitution fixes the jurisdiction, it cannot be changed by the legislature. It is true that *Coleman* v. *State,* 83 Miss. 290, 35 So. 939, 64 L. R. A. 807, 1 Ann. Cas. 406, and *State* v. *Hughes,* 96 Miss. 581, 51 So. 464, proceed upon the idea that the statute is valid, but in neither of those cases was the power of the legislature called in question, nor was the constitutionality of the statute challenged. There is a definite purpose in the constitutional provision, and that definite purpose is to have a person accused of crime of an indictable nature tried where the offense is committed, and the legislature cannot pick out a number of jurisdictions and leave to the prosecuting power of the state the selection of the battle ground. The trial must take place in one particular county or jurisdiction then prescribed by law, and the accused cannot be deprived of this right without his consent.

If the legislature has power to prescribe that jurisdiction may exist in any county where the effects of an act or the means or agency of an act may extend into another county, which enables the prosecution to select either jurisdiction in which it chooses to commence operations, the constitutional provision is a vain and idle utterance. The object of the Constitution was to confer protection on the person accused of crime, to give him the right to face his accusers in the jurisdiction where the offense occurred, and

he cannot be deprived of this by the expedient of the legislature enacting statutes contrary to the Constitution.

Decisions of other states are not controlling on us. They are only persuasive and have no binding effect as authority. The rights of the accused to be tried where the circumstances of the charge or accusation are known, and where he may have the benefit of that indefinable something that gives the public a knowledge of the entire surroundings, which is sometimes called "the atmosphere" of the case, is important. Many things cannot be known under the strict rules of evidence that operate in favor of a person accused of crime so that current knowledge of men, acts, and motives cannot be reproduced under the rules of evidence.

In the second place, for the purpose of jurisdiction of felonies and the beginning of prosecutions .thereunder for jurisdictional purposes, the prosecution must be in a court that has jurisdiction to try and dispose of the issues involved in the charge. Section 27 of the Constitution of 1890 provides that:

"No person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or the military when in actual service, or by leave of the court for misdemeanor in office; but the legislature, in cases not punishable by death or by imprisonment in the penitentiary, may dispense with the inquest of the grand jury, and may authorize prosecutions before justices of the peace, or such other inferior court or courts as may be established, and the proceedings in such cases shall be regulated by law."

It will be observed from a careful reading of this section that an indictment is the beginning of the prosecution and is the only method of prosecuting a felony. The circuit court has no jurisdiction of a felony until an indictment is returned by the grand jury. Whatever may be the power of the legislature to prescribe what shall toll the statute of limitations in a criminal case, it cannot make anything except an indictment a beginning of the prose-

cution for purposes of jurisdiction to try the offense. Consequently any statute conferring such power to maintain a prosecution at whatever place or in whatever court an affidavit may be made is null and void so far as conferring jurisdiction is concerned. Jurisdiction is conferred on the circuit court of the subject-matter, and can only be brought into existence by an indictment returned by the grand jury. The power of the legislature to enact statutes referred to has never heretofore been brought to the attention of the court. The court, of course, proceeds, in the absence of such objections, upon the idea that the act of the legislature is constitutional under the rule of practice of the court not to decide constitutional questions until they are presented.

If, however, the statute is valid, then Judge HOLDEN'S view that it does not come into operation in the present case because the offense here involved was not charged in the affidavit is sound. This proposition has never before been decided. It is fundamental that a court has no jurisdiction to try a criminal case until a lawful charge is made, and it can only try the charge made or some lesser crime embraced therein. It cannot arrest a man on one charge and try him on an affidavit making such charge, and convict him of another crime not embraced in such charge.

The power of a justice of the peace to hold a person charged with an assault with intent to murder until the result of the assault is known is quite a different thing from charging him with the result of the assault after death shall ensue. He could not proceed after the death on the original affidavit at all, but would have to institute a new prosecution charging a different crime. In my opinion an investigating court such as conducted by a justice of the peace has neither a direct nor a collateral effect in fixing the jurisdiction for the trial of the felony. Functions of the justice are merely those of a conservator of the peace. He does not determine jurisdictions or issues. His function in such cases is to secure the presence of a suspected criminal before a court that may try the accused for his offense.