PASSONS, et al. *v*. STATE.

In Banc. Mar. 13, 1950.

No. 37543 (45 So. (2d) 131)

M. Ney Williams, and Barnett, Barnett & Jones, for appellants.

552

George H. Ethridge, Acting Attorney General, for appellee.

**Lee, J.**

Appellants, Robert Earl Passons and J. T. Boyette, were jointly indicted with two others by the Grand Jury for the second district of Hinds County at the September 1948 term on a charge of robbery with firearms. At the regular February 1949 term of said Court, only the appellants were put on trial, resulting in a verdict of guilty of robbery and sentence thereon. From the judgment rendered, they appeal.

A series of events culminated in the robbery on account of which this prosecution was instituted. On March 9, 1948, Phil Dear, accompanied by a Negro boy, went from his home in Rankin County to Louisiana to obtain a load of liquor. They were traveling in a Chevrolet truck. They secured the liquor, and came back through Vicksburg, where they lay over until 10:00 or 10:30 o'clock that night. They left via Highway 61. When they approached Port Gibson, a car drove up behind them and blew its siren. Dear pulled his truck to the side of the road and stopped. Passons demanded of Dear his invoices. Dear and his companion were terrified, claiming that Passons exhibited a gun, but finally he found the invoices and delivered them. Dear and his companion were transferred to the car, with Passons on the back seat, and another defendant driving the same, and appellant, Boyette, driving the truck. This occurrence was in Claiborne County.

With the truck leading the way, they turned around and proceeded to the intersection of Highway 18, and thereafter in an easterly direction along said highway. Most of the time the truck was in sight. After 4 or 5 miles, they had a flat on the car, and had to stop to fix it. The truck discovered that the car was not following, and returned to the disabled car. After the tire had been repaired, the two vehicles proceeded in the order theretofore followed. Finally, they came near the town of Utica and stopped. Boyette and the other defendant took the Negro boy, L. J. Barnes, in the car and went to Utica. They left Dear and Passons with the truck. At this time, Dear claimed to have given $290 for a ransom not to take the boy off. On the return, the same two defendants drove off in the truck, leaving Dear and Barnes in the custody of Passons. When these two came back, the truck, minus the cargo of liquor, was delivered to Dear. All of the acts around the Town of Utica occurred in the Second Judicial District of Hinds County.

Dear and his companion went to the City of Jackson, where they reported the incident to the police. Subsequently, the appellants were taken into custody and freely admitted their participation, claiming that the episode had been planned by all of the defendants. Passons testified on the trial, and in effect corroborated the state's version, except that he denied the use of a gun or guns, which, he said, was unnecessary. Dear and his companion affirmed that guns were used, and that this fact induced fear on their part.

Appellants assign a number of errors which we will take up in the order argued in their brief.

Their first proposition is that if the crime of robbery was committed, it occurred in Claiborne County and not in the Second District of Hinds County.

██ Appellants, in their statements, admitted a plot to hijack this liquor. They went to Vicksburg, picked up the trail, and lay in wait until the Dear truck started out. They followed and stopped the truck as mentioned above. Had they deprived Dear of his truck at that point, and left him stranded, undoubtedly the proper venue would have been Claiborne County. Evidently they did not desire to consummate the act at that place, for they kept Dear in their custody, and during the trip, the truck was in his sight and presence most of the time. The plan was hijacking—robbing a bottlegger of his liquor—in view of the return of the truck after the theft. The liquor was actually taken near Utica, with the final consummation in the Second Judicial District of Hinds County. Under Section 2429, Code of 1942, the Second Judicial District of Hinds County was the proper venue.

The second proposition is that where a prosecution is begun in one county, the State cannot prosecute in another until the first prosecution is terminated.

This assignment grows out of these circumstances: ██ About a week after the trial, appellants made a motion to set aside the verdict and judgment because

this prosecution had been initiated in the First Judicial District of Hinds County. Hinds County has two districts, and in matters of jurisdiction, these districts must be treated as two counties. Isabel v. State, 101 Miss. 371, 58 So. 1. Hinds County also has a county court and the County Judge presides over that court in both districts. The County Attorney presented an information in the county court. In the caption appeared these words: "County Court July Term A. D. 1948, First Judicial District, Hinds County". But, in the information, he averred that he was "duly empowered to inform of offenses committed within" Hinds County, and then charged that the defendants "in said county" committed the robbery. On the preliminary hearing, the county judge bound the appellants over to await the action of the grand jury of the Second Judicial District. That order has a recitation "and the court being advised in the premises". From the language of the order, it must be presumed that the County Judge inquired into the matter and was satisfied that the offense was committed in the Second District. Besides, the state's evidence established the venue in the Second Judicial District.

We hold that this preliminary proceeding did not constitute a beginning of the prosecution in the First District of Hinds County, within the meaning of Section 2429, supra.

The facts of this case distinguish it from Coleman v. State, 83 Miss. 290, 35 So. 937, 64 L. R. A. 807, 1 Ann. Cas. 406. There the mortal wound was inflicted in Coahoma County and the death resulted in Quitman County, and the Grand Jury of Quitman County returned an indictment for manslaughter. After arrest and plea, that court entered a nolle prosequi. Subsequently the grand jury of Coahoma County returned an indictment for murder, and the case was tried there. This court held that jurisdiction had attached in Quitman County and that court should have proceeded to a final determination of the

matter. Nor is our conclusion out of harmony with Atkinson v. State, 132 Miss. 377, 96 So. 310.

██ The third proposition complains of error in the state's instructions which follow the indictment, naming the truck, the liquor, the $290, "or any part thereof".

But the test in robbery is whether or not any of the property named in the indictment was taken by violence, force or fear; and we do not think this assignment is well taken.

The fourth proposition assigns error in the bailiff's discussing the case with the jury and refusing to transmit their request for further instructions.

This complaint came out of these circumstances: ██ Some time after the jury had gone to the room for deliberation, one of them asked the bailiff if the judge would further instruct them if liquor had any legal property value. The bailiff said he did not think the judge would give further instructions, that they had their instructions. But before he could say that he would see the judge, the door was shut, and the jury said nothing further. The bailiff did not mention the matter to the judge.

No meddling with, or intent to influence, the jury was shown. The inquiry did not make a direct request, but called for the bailiff's opinion as to whether the judge would give additional instructions. Bailiffs should make reports to the judge, when requested, and never give their opinions about anything involved in a case. We are unable to see how this incident could have caused any harm.

The fifth proposition is that there are no property rights in liquor or vehicles used to transport it. ██ The argument is that both the liquor and the truck were contraband, and the taking of such would not constitute a crime.

It is true that, by the provisions of Section 2618, Code of 1942, there are no property rights in intoxicating liquor, or in motor vehicles used in violation of the chapter

on intoxicating liquor. But the purpose of this statute is to disqualify any person, unlawfully in possession of liquor or motor vehicles used in connection therewith, from asserting a right to their recovery, or for damages for their seizure. Undoubtedly, it is not the purpose to abridge the state of its power to punish persons who steal liquor, or rob persons and take their liquor.

In Crane v. State, 157 Miss. 548, 128 So. 579, 582, it was contended that Crane could not be guilty of burglary, for the larceny intended was to steal liquor, and there were no property rights in liquor. The court said: ". . . of course, they (intoxicating liquors) have a property value, and are not included in the prohibitive statute defining their nonproperty status when kept for sale or unlawful use."

Contraband liquor may be the subject of larceny or robbery. Ray v. Commonwealth of Kentucky, 230 Ky. 656, 20 S. W. (2d) 484, 66 A. L. R. 1297; Burgess v. Maryland, 161 Md. 162, 155 A. 153, 75 A. L. R. 1471; and the many cases there cited.

The sixth proposition contends that the verdict was contrary to the overwhelming weight of the evidence.

The argument is that, because the jury found the appellants guilty of mere robbery rather than robbery with firearms, they did not believe the deadly weapons were used. But, as has been heretofore said, the statements of the appellants coincided in most particulars with the evidence of the state. About the only discrepancy between the evidence of appellant, Passons, on the trial, with that of the state, was concerning the use of firearms. He admitted that he had a gun, but had unloaded it, and did not use the same because it was unnecessary. It was shown that these appellants had borne a good reputation prior to the commission of this offense. We are inclined to the view that their previous good reputation caused the jury to throw the mantle of charity over them, as sometimes happens when a jury finds an accused guilty of manslaughter when the proof sustains murder. Un-

der their own version, appellants were guilty of robbery.

The seventh proposition complains of error because of the modification of instructions.

The court gave instructions for the state covering both robbery with firearms and simple robbery. One of the instructions complained about was an effort to define a reasonable doubt, and for that reason, was bad. This court has repeatedly condemned such efforts. The other instructions as modified undertook to bring them in harmony with the state's instructions. Besides, by their other instructions, the appellants obtained a fair and full statement of the law applicable to their case. We find no harmful error in this respect.

Affirmed.