SHERMAN *v.* STATE.

May 3, 1954

No. 39157 63 Adv. S. 68 72 So. 2d 190

*W. M. Broome,* Crystal Springs, for appellant.

48

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

HOLMES, J.

Appellant was tried and convicted in the Circuit Court of Copiah County on an indictment charging him with the unlawful sale of intoxicating liquor. He was sentenced to pay a fine of $350 and to serve 70 days in the county jail, and he prosecutes this appeal from the judgment of conviction.

The appellant urges two grounds for the reversal of this case: (1) That the verdict of the jury is contrary to the overwhelming weight of the evidence, and (2) that the bailiff in charge of the jury was guilty of improper communication with the jury, resulting in prejudice to the appellant.

The state's chief witness was John F. Rice, the Town Marshal of Wesson and a deputy sheriff of Copiah County, who testified substantially as follows: That on the evening of July 29, 1953, in company with his two sons, one 13 years of age and the other younger, he drove to the home of the appellant in Copiah County where he found the appellant and told him that he wanted to buy a pint of whiskey; that the appellant asked him what color, and the deputy replied, "Early Times"; that the deputy then felt in his pocket for the money to pay for the whiskey, and discovering that he had no money, he told appellant that he would go back and get some money and then return and the appellant replied that it (the whiskey) would be waiting for him when he came back. The deputy further testified that he then drove to the vicinity of Rockport and borrowed $5.00 from Marvin Murray, receiving from the said Marvin Murray a $5 bill. Several times in his direct examination he named Marvin Murray as the man from whom he borrowed the $5.00. Later in his cross-examination he testified that he had not said Marvin Murray but Marvin Morris. At any rate, he returned to appellant's home after borrowing the $5.00 and bought from the appellant two half pints of whiskey, for which he paid $4.00, receiving from the appellant $1.00 in change. According to the deputy's testimony, the whiskey was delivered to him in a paper sack and he brought the whiskey to the sheriff's office and delivered it to the sheriff. The deputy further testified that he was to be paid for his time in each case in which he made an arrest and appeared as a witness. The deputy was corroborated by his 13-year-old son, Joe Rice, who said that he was present when his father purchased the liquor and that he saw the transaction. He further testified, however, that he thought that his father had paid $1.50 for each half pint and that the appellant had given his father $2.00 in change instead of $1.00. The sheriff of the county testified that the two half pints of liquor in

the paper sack were brought to him by his deputy and he identified the whiskey on the trial and the whiskey was introduced in evidence. Marvin Morris appeared as a witness for the State and testified that he had loaned the $5.00 to the deputy and that the deputy had paid the money back to him a day or two thereafter.

Lamar Beasley and Melton McNair, appearing as witnesses on behalf of the appellant, testified that they were present at the appellant's home on the evening that the deputy sheriff claimed to have purchased the whiskey from the appellant; that they saw the deputy when he appeared at the appellant's home, riding in a reddish looking station wagon; that the deputy left with the appellant a paper sack and set it down with its contents at the appellant's door and told the appellant that he would be back for it in a little while; that shortly thereafter the deputy returned and blew his horn and the appellant delivered the paper sack and its contents to the deputy and that the deputy drove off. The appellant testified in his own behalf, denying that he had sold the whiskey to the deputy and stating that on the evening in question the deputy had brought something in a paper sack to appellant's home and had set the paper sack down just inside the appellant's door and told him that he would be back for it in a little while, and shortly thereafter the deputy returned and that he, the appellant, delivered the sack with its contents to the deputy and that the deputy drove off.

 The appellant undertakes to point out certain contradictions and conflicts in the State's proof and argues that these contradictions and conflicts render the State's proof unworthy of belief, and that therefore the judgment of conviction is contrary to the overwhelming weight of the evidence. It is too well settled under our system of jurisprudence to require any citation of authorities that the credibility of witnesses is a matter for the jury. The contradictions pointed out by the appellant in the State's proof and the conflict in the evi-

dence as a whole serve only to create an issue of fact for the determination of the jury. ■■■ This issue was resolved by the jury against the appellant and there is ample evidence, in our opinion, to support the judgment of conviction.

It is further complained by the appellant that the judgment of conviction should be reversed because of improper communication on the part of the bailiff with the jury after the case was submitted to the jury and while the jury had the appellant's case under consideration. This complaint arises out of the following circumstances: After the jury had had the appellant's case under consideration for about an hour and a half, the bailiff was called to the door of the jury room. The bailiff entered the room and closed the door behind him because, according to his testimony, there were several people in the hall. On being asked to tell what transpired, the bailiff said: "And several, there was one, two or three, was talking about getting a report to the judge, said that there had been votes taken, some had voted one way and some another, and they wanted me to come and ask the court if they could come in and make a report to that effect, and I told them that I didn't think I could report anything unless they had reached a verdict or decided they couldn't reach a verdict, and I would ask the judge to bring them out in here."

The bailiff further testified that he was in the room something like a minute and that no deliberations were being carried on by the jury while he was in the room and that no vote was taken in his presence and he was not informed how many voted either way. He testified that he said nothing to the jury about the merits of the case or the guilt or innocence of the defendant and made no suggestion to any juror as to how he should vote or as to what the verdict should be, and that he neither said nor did anything that could have influenced the verdict of the jury one way or another. The bailiff further testified that he reported this incident to the

judge and the judge took no action but said "just wait." The jury returned its verdict of guilty about two hours after the occurrence of this incident.

It is clear from the testimony that no influence whatever was exerted on the jury as a result of this incident, and that the incident furnishes no grounds for the reversal of the judgment of conviction. Webb v. State, 21 So. 133, and Passons, et al. v. State, 208 Miss. 545, 45 So. 2d 131. It follows from the foregoing views that the judgment of conviction should be, and it is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.