CRANE *v.* STATE.

(Division B. June 2, 1930.)

[128 So. 579. No. 28724.]

I. L. **Sheffield,** of Fulton, for appellant.

**Forrest B. Jackson,** Assistant Attorney-General, for the state.

**Ethridge, C. J.,** delivered the opinion of the court.

Vander Crane was indicted, tried, and convicted of burglary in the circuit court upon an indictment returned

by the grand jury of Itawamba county, which, omitting the formal parts, reads as follows:

"That Vander Crane in said County, on the 25th day of February, A. D. 1929, the filling station of J. W. and S. N. Propst, then and there situated feloniously and burglariously did break and enter, with the intent, the goods, chattels and personal property of the said filling station of the said J. W. and S. N. Propst in said filling station kept for sale, then and there, feloniously and burglariously to take, steal and carry away, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi."

S. N. Propst testified that on the night on which the alleged burglary took place he had gone to town, or across the street, to get a coca-cola, and on returning to the place of business discovered that some one was in the filling station. He stated that he had left the station door locked, and that the window in the front room was found to be broken that night, and that previous to that night the window was not broken. He also testified that after the defendant left the filling station he (Propst) had gone to the rear of the building and saw the defendant pass out of the front door and go hurriedly away; that he had locked the window down when he went for the coca-cola, and that the window was securely fastened down. He sent for his father, and also went up town and found the defendant near a bank on the street of the town, and carried him back to the filling station and sent for the town marshal, and turned the defendant over to him.

The town marshal asked the defendant why he went into the building, and the defendant stated, "What would any man break, or go, into a house for except to get money or something out of it?" The testimony for the state showed that there was no inducement to obtain the said statement and no threat made against the defendant as an inducement therefor; that all that was

said by the elder Propst was he was surprised to find him in the building, as their families had been friends for a long time, and that he would turn him over to the law. The testimony for the state, as shown by the witnesses, was to the effect that the building was entered through a window by the defendant pushing out a pane of glass, the pane being large enough for a man to enter the opening left after the pane was pushed out, and that the pane of glass was found on the floor inside, and the window was fastened down, and the doors locked.

The defendant testified in his own behalf, and denied breaking the window, but admitted going into the building, and stated that his purpose in entering it was to get a drink of liquor; that he had seen liquor in the building before, and it was usually in the back room. He denied making the statement, above quoted, to the marshal.

S. N. Propst, on his cross-examination, was asked:

"Q. You testified in this case before? A. Yes, sir.

"Q. And you testified before that you hadn't noticed this window in two or three weeks, you didn't know when it was broken out? A. No, sir.

"Q. You are positive of that? A. Yes, sir.

"Q. You testified before and said nothing about it being locked? A. They didn't ask me about it being locked.

"Q. They asked you about the condition of the window? A. The window has been locked and nailed down ever since.

"Q. In your former testimony you said there was another window broken too? A. This window was nailed up before and after—

"Q. You said that one had been broken out some bit and you noticed that but this you didn't notice? A. Yes, I knew it was broken that night for I saw the tires pushed over.

"Q. You didn't testify to that before? A. No, sir.

"Q. You say you had locked up, had you locked up for the night? A. No, sir.

"Q. You expected to come back by? A. Yes, and get the change.

"Q. You hadn't locked up for the night, but locked up and went out to get a coca-cola? A. Yes, sir.

"Q. You expected to see to these things when you came back and locked up completely? A. Yes, sir."

The defendant sought to prove by two witnesses that on a former trial the witness had testified contrary on this point.

W. R. Wilcutt was introduced and was asked as follows:

"Q. Mr. Wilcutt, were you here at the last term of court when the case of the State v. Vander Crane was tried? A. Yes, sir.

"Q. Did you hear the witnesses' testimony in that case? A. Yes, sir.

"Q. Tell the jury what Mr. S. N. Propst testified with reference to when he first discovered this window broken out?

"By the Court: I don't think this is competent. (State objects, which objection is sustained, to which the defendant excepts.)

"By the Court: The record was made in this case and that is the best evidence. (Defendant asks for permission to complete the record. Jury retire.)

"Q. In his testimony how long did he state how long since he noticed this window? A. He said if the window was broken he hadn't noticed it until the next morning.

"Q. How long before this had it been since he had paid any attention to the window or did he say? A. I don't believe he said positive how long it had been.

"Q. Did he or not testify that he had locked the window that night? A. Locked the door.

"Q. The window that was alleged to have been broken? A. I don't remember him saying anything about fastening the window or locking it.

"Q. Do you remember whether or not he swore it had been two or three weeks since he examined the window? (State objects. Sustained. Defendant excepts.) A. He said he hadn't noticed it until next morning, I remember that, if the window had been broken.

"By THE COURT: Don't you remember as a matter of fact that question about how long the window had been out was never raised until both the defense witnesses were put on, there was nothing said by the state witnesses about how long the window had been out? A. The best I remember the question was asked Nolen (Propst) whether or not he noticed the window being out before that morning and he said he didn't and then they asked him if he wasn't in there pretty well every day and he said he was, but said if the window was broken he never saw it until that morning. (Witness dismissed.)"

Mr. Jim Cauthern, having been duly sworn, testified as follows:

"Q. Mr. Cauthern, were you a member of the jury that tried the case of the State against Vander Crane wherein he was charged with burglary for breaking in the filling station? A. Yes, sir.

"Q. Do you remember Mr. Nolen Propst being on the stand? A. Yes, sir.

"Q. Do you remember what he said about when he first noticed about the window being broken out? A. Yes, he said he didn't know whether it was broken out that night or not, it had been two or three weeks since he had noticed that back window, that was the words he used.

"Cross-Examination.

"Q. Don't you know, Mr. Cauthern, he said he hadn't noticed it being broken out until after this boy was caught in there? A. Yes, he said he didn't know it until that night or the next morning.

"Q. He found the window broken out then and that was the first he knew of it? A. Yes, hadn't noticed it for two or three weeks.

"Q. But he didn't say he knew it hadn't been broken out before that night? A. Said he hadn't noticed it for two or three weeks."

The state witness testified, as to the ownership of the building, that the building and tanks were owned by the Standard Oil Company, but they were operating the business, and the personal property belonged to them, and that they had the building leased. At the conclusion of all the evidence, the defendant moved the court for a directed verdict, because the proof shows the house alleged to have been burglarized was the property of the Standard Oil Company, and the indictment in this case alleged it to be the property of J. W. Propst and son, whereupon the court stated: "That is all subject to amendment and should be passed on by the court before placed before the jury."

Then the district attorney moved the court to amend the indictment so as to read as follows: "The filling station of the Standard Oil Company, a corporation duly chartered to do business in the state of Mississippi and being operated by J. W. & S. N. Propst, then and there situated, feloniously and burglariously did break and enter with the intent the goods, chattels and personal property of the said J. W. and S. N. Propst in said filling station kept for sale then and there feloniously and burglariously to take, steal and carry away," which amendment was allowed by the court as shown by the stenographer's notes, but there is nothing to show that the amendment was placed upon the minutes of the court, and it does not appear upon the face of the indictment contained in the record. We think, therefore, that the case must stand upon the indictment as originally drawn; it being necessary for amendments to indictments to appear upon the minutes of the court. We cannot resort to stenographer's notes and other things aliunde the minutes of the court to determine whether or not an amendment has in fact been made, but we are of the

opinion that the amendment was not necessary; that it is not necessary to prove the title to the property to be in the person alleged; but, if the evidence shows that the person occupying the building was a lessee or qualified owner of the building, that is sufficient ownership to sustain the indictment. Brown v. State, 81 Miss. 143, 33 So. 170.

On the proposition of refusing to permit the evidence of the former testimony of S. N. Propst to go to the jury, we do not think the evidence is sufficient to cause a reversal of the case. It was not necessary for the defendant to produce the stenographer, or the stenographer's notes, who took the testimony, as being the best evidence in the case. A defendant could not anticipate a variance in the testimony of a witness who had formerly testified nor in what particular the evidence would vary. The rule of the best evidence does not apply in this case. Any person who heard the witness testify may testify as to what his testimony was if he remembers it. However, the evidence on the present hearing and the former hearing, as disclosed by the record, does not indicate such a change of testimony as would be inconsistent with honest recollection or failure to remember. It would have little, if any, probative value upon the issues involved here, and we would not reverse in a case like this where a conviction is supported by clear and unequivocal evidence.

It is insisted by the defendant that he testified he went to the house to procure liquor, and that there is no property value in intoxicating liquors, and that consequently the proof is insufficient to sustain burglary because he did not intend in entering to take the property in the legal sense of that term, and that such intention was necessary to make out the case. The testimony in the first place failed to show that it was intoxicating liquor that he went in to get. He stated that he went in to get liquor, and the jury might infer that it was intoxicating liquor, but the term "liquor" does not necessarily exclude nonintoxicat-

ing liquors or beverages. In the second place, the law does not prohibit absolutely and to all intent the possession of intoxicating liquors when the liquors may lawfully be possessed; of course, they have a property value, and are not included in the prohibitive statute defining their nonproperty status when kept for sale or unlawful use, and there was no merit in this assignment.

It is next complained that the court erred in modifying and refusing an instruction as asked by the defendant. There appears in the stenographer's notes a statement made by the court as follows: "By the court: The charge for the defendant has been asked, reads as follows: 'The court charges the jury before the defendant can be convicted in this case you must be convinced by the evidence beyond all reasonable doubt of every material element in the indictment, meaning the breaking and entry and the felonious intent to take and steal personal property of value, and unless you are so convinced, you must acquit him. In this connection the court says to you liquor has no value.'" The judge continues the statement as follows: "This charge, as written is not the law, as understood by the court, but down to the last clause which reads as follows, to-wit: 'In this connection the court says to you liquor has no value' the charge is all right and will be given without the last clause attached to it. The same is refused as written." This is all that appears in the record pertaining to the said instruction. It does not appear to have been marked "refused and filed," nor does the record show any exception to the ruling of the judge or that the defendant did not accept it as modified by the court. We, of course, cannot consider an instruction being modified or refused unless it is either marked "given and filed," or "refused and filed" by the clerk, or there is a bill of exceptions showing that the defendant excepted to the ruling of the court and declined to accept the instruction as modified. We there-

fore find there is no reversible error in this case, and the judgment of the court below will be affirmed.

Affirmed.