[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 781 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 782 
¶ 1. Quincy Smothers appeals the decision the Hinds County Circuit Court convicting him of murder. Smothers raises the following issues in his appeal: (1) whether the trial court erred in allowing the prosecution to secure commitments from the venire during voir dire, (2) whether he was prejudiced by the introduction of evidence of another murder charge, (3) whether the trial court should have granted a mistrial when the State's witness testified about an alleged criminal activity of his for which he was not being tried, (4) whether the evidence presented at trial was sufficient to establish the crime of murder and whether the jury's verdict was against the overwhelming weight of the evidence, (5) whether the trial court erred by not giving his requested cautionary jury instruction regarding his co-defendant's testimony, and (6) whether the trial court improperly limited his right to cross-examine the State's witness. Finding no error, we affirm.
 FACTS
¶ 2. On July 31, 1996 around 4:00 p.m., a green Mitsubishi Gallant swerved off of Interstate 220 and onto the shoulder where a body was seen being pushed out of the driver's seat. The car immediately continued along on I-220. When other cars stopped, it was discovered that the individual lying on the side of the highway had been shot in the head. Investigating officers later identified the deceased as Philip Florvil. Further investigation developed that both Edna Mosley and Ade Ates were also killed on the same day.
¶ 3. Quincy Smothers was charged with the murder of Florvil and Ates. At trial, Frederick Russell, a co-defendant of Smothers, testified that Florvil, Ates, and Mosley planned to sell cocaine to Smothers, Cedrick Walker, and himself. Russell further testified that Smothers and Walker planned to double-cross the drug sellers and rob them of their drugs.
¶ 4. Russell described how all of the parties to the drug transaction met and rode around Jackson looking for a place to complete the drug transaction. He stated that the drug sellers met another person in a small pick-up truck from whom the drugs were obtained. According to Russell, Mosely, Ates, and Florvil were in the green Mitsubishi Gallant, and Smothers, Walker, and himself were in a red Ford Tempo. Russell further stated that after riding around, the two cars stopped and that Smothers and he got into the Mitsubishi Gallant with Florvil and Ates. Russell also testified that Florvil was driving, that Ates was the front passenger, that Smothers was behind the driver, and that he was in the rear passenger seat. He also said that Walker rode in the Ford Tempo with Mosley. Thereafter, the two cars continued to follow each other while driving around Jackson.
¶ 5. Russell testified that Smothers shot Florvil twice in the back of the head as Florvil was driving on I-220, and that Smothers also shot Ates once in the head. Russell then described how Smothers grabbed the steering wheel while reaching over Florvil, steered the car onto the shoulder of the highway, pushed Florvil out of the driver's side door, and continued to drive the car along I-220.
¶ 6. According to Russell, Smothers was later dropped off, but Walker and he met near Tougaloo. He described how he shot Mosley in the back of the head as she checked on Ates whose body was still in the Mitsubishi Gallant. Thereafter, Ates's and Mosley's bodies were dumped in the *Page 783 
woods, and the Mitsubishi Gallant was burned. Later, the stolen cocaine was split between Smothers, Walker, and Russell.
¶ 7. Mosley was pregnant when she was shot, so Russell was charged with two murders. All of the murders were indicted separately.
¶ 8. Smothers asked that testimony about the murder of Ates be excluded and that evidence regarding Mosley be limited only to the extent that Russell could be cross-examined about it. With regard to Ates's murder, the trial court allowed Russell to testify about what occurred at the scene and nothing beyond the circumstance surrounding the Florvil murder.
 DISCUSSION I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TOSECURE COMMITMENTS FROM THE VENIRE DURING VOIR DIRE ¶ 9. Uniform Circuit and County Court Rule 3.05 states, "No hypothetical questions requiring any juror to pledge a particular verdict will be asked." Additionally, Mississippi case law bars attorneys from trying to get the jury to promise that under a hypothetical set of circumstances that they will vote a certain way. West v. State, 553 So.2d 8, 21-2 (Miss. 1989).
¶ 10. Smothers argues that he was denied a fair trial because, during voir dire, the State allegedly asked the jury to pledge a particular verdict. He relies upon the statements made by the State during voir dire in support of his allegations:
 MR. DAVIDSON: We do not have the murder weapon. We do have an eye witness. Is there anyone in here that would tell me that you would require something else, something more than eyewitness testimony?
 MR. HOLMES: Your Honor, we are going to object. That asks for a commitment from the jury. There is no way they can say that without making a commitment.
 . . .
 THE COURT: Rephrase it.
 MR. DAVIDSON: To make sure that I understand, is there anybody in here that would require the State of Mississippi to produce the murder weapon in order to return a verdict of guilty?
 MR. HOLMES: Same objection, Your Honor. They can't make that commitment at this time.
 THE COURT: I will let them answer that question.
(Supp. Vol. 1, pp.38-9)
¶ 11. In the case sub judice, the transcript of voir dire does not indicate any statements made by the State that required the jury to pledge a particular verdict. Furthermore, the transcript does not indicate that any of the potential jurors responded in the affirmative to the State's questions. Here, the question posed by the State is distinguishable from those prohibited by case law because the question asked was not a hypothetical question. Smothers cites no authority which would indicate that the kind of question asked in his case amounted to a solicitation of a promise of a particular verdict prohibited under West and by the rules. Therefore, this assignment of error is without merit.
II. WHETHER SMOTHERS WAS PREJUDICED BY THE INTRODUCTION OFEVIDENCE OF ANOTHER MURDER CHARGE
¶ 12. Mississippi Rule of Evidence 404(b) sets forth that evidence of other crimes may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 403 states that:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair *Page 784 
prejudice, confusion of the issues, or misleading the jury. . . .
Evidence admissible under Rule 404(b) is subject to the prejudice test of Rule 403, and a trial court is required to consider whether the probative value of the questionable evidence is outweighed by undue prejudice. "Rule 403 is an ultimate filter though which all otherwise admissible evidence must pass." Jenkinsv. State, 507 So.2d 89, 93 (Miss. 1987)
¶ 13. Pursuant to Rule 404(b), evidence of other crimes is admissible if offered for any purpose other than to show conduct in conformity with that bad act.
 The rule is thus that the prosecution may not be allowed to put before the jury evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show a probability that the accused committed the crime for which he is on trial because he is a person who has displayed criminal propensities in the past.
Jenkins, 507 So.2d at 92. There are several exceptions to the general prohibition set out in Rule 404(b):
 Rule 404(b) lists a host of reasons that would make the evidence admissible, but the list is illustrative only. To a large extent, the "other purposes" of Rule 404(b) are but a codification of Mississippi case law. For instance, in Davis v. State, the Court deemed other acts admissible on the theory that they were part of a continuous transaction which constituted the charged crime. This theory, of course, is familiar to common law attorneys as the concept of res gestae. Presumably, this exception is still viable under the Mississippi Rules of Evidence.
Ellis-Staton, Mississippi Evidence Rule 404(b) (3d ed. 1995). The court has opined that proof of another bad act is admissible where the offense charged and the act offered to be proven are "so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences" proof of the other crime or act is admissible. Ballenger v. State,667 So.2d 1242, 1256 (Miss. 1995) (evidence that defendant and accomplices burned murder victim's house after robbing and beating her was admissible to show that defendant had intent that victim be killed so that defendant would not be linked to robbery, that defendant planned to cover up robbery by burning house, that defendant had knowledge of robbery and attempted to conceal it, and that defendant was participant in robbery that resulted in victim's murder).
¶ 14. Evidence of other acts, wrongs, and crimes admissible under the exceptions of Rule 404(b) are admissible regardless of whether they occurred before or after the charged offense. Ford v. State,555 So.2d 691, 692-93 (Miss. 1989) (holding in grand larceny prosecution that testimony of teller from different bank that defendant allegedly robbed next day using identical modus operandi
was admissible for specific limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).
¶ 15. The testimony concerning the Ates murder was admissible pursuant to the res gestae exception to the general prohibition in Rule 404(b) as the admission of this testimony about a subsequent murder was necessary to tell a complete story of the events. Without the information concerning the fact that Smothers had murdered both Florvil and Ates, it would have been an incomplete nonsensical story to the jurors. It was necessary information to allow the jury to get a full and complete picture of the facts as they existed at the time of the crime, as the transactions in sequence were interrelated in time, place, and fact. Additionally, testimony concerning the path of the bullets and the distance of the shooter from the victim was relevant because it rebutted the defense's theory that Russell killed both victims. Furthermore, Rule 404 does not preclude the *Page 785 
admission of this evidence as it was clearly relevant and admissible because it was offered for a purpose other than to show conduct in conformity with the other bad acts with which Smothers was accused. Accordingly, this assignment of error is without merit.
III. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED A MISTRIAL WHENTHE STATE'S WITNESS TESTIFIED ABOUT AN ALLEGED CRIMINAL ACTIVITYOF SMOTHERS FOR WHICH HE WAS NOT BEING TRIED
¶ 16. In Reynolds v. State, 585 So.2d 753, 754-55 (Miss. 1991), the supreme court referred to other crime and character evidence:
 Rule 404(b) of the Mississippi Rules of Evidence makes such statements improper and inadmissible. Rule 5.15 of the Mississippi Uniform Criminal Rules of Circuit Court Practice[1] provides that the trial court shall declare a mistrial on the motion of the defendant if there occurs an `error or legal defect in the proceeding, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.' In accordance with the rule, this Court has held that an occurrence of any prejudicially inadmissable matter or misconduct before the jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial.
 . . .
 Where the remark creates no irreparable prejudice, then the trial court should admonish the jury to disregard the improper remark. Such remedial acts of the trial court are usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. The jury is presumed to have followed the instruction of the trial court.
(internal citations omitted).
¶ 17. At trial, Russell testified that he was the one who killed Mosley, not Smothers. A limiting instruction was given to contain any possible implication of Smothers's guilt that could have stemmed from that comment. Smothers relies on Reynolds and claims that the trial court should have sua sponte directed the jury to disregard any improper remarks. However, the case sub judice is distinguishable from Reynolds. In Reynolds, the statements made were in relation to the defendant's reputation and criminal record which was testimony in violation of M.R.E. 404. Here, Russell's testimony described the surrounding circumstances and connection between the killings of Florvil and Ates and the killing of Mosley. The statements were not offered to prove that Smothers was guilty of killing Florvil just because he also indicated a desire to see Mosley killed.
¶ 18. More importantly, the record does not indicate that Smothers requested an admonishment by the judge to the jury at any time regarding this testimony. Further, under U.R.C.C.C. 3.12, a mistrial is only warranted where there has been substantial and irreparable prejudice to the movant. In this case, Smothers failed to show prejudice in light of Russell's testimony that he killed Mosley, not Smothers, and the trial courts limiting instruction which informed the jurors that any information which might implicate Smothers in other crimes was not to be brought into their thinking on guilt in the murder of Florvil. Therefore, this assignment of error is without merit.
IV. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TOESTABLISH THE CRIME OF MURDER AND WHETHER THE JURY'S VERDICT WASAGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
 A. Sufficiency of the Evidence
¶ 19. A challenge to the sufficiency of the evidence requires an analysis *Page 786 
of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss. 1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict and JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v.State, 542 So.2d 222, 225-26 (Miss. 1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss. 1993).
¶ 20. Here, legally sufficient evidence existed to find Smothers guilty beyond a reasonable doubt. The State made out its prima facie case by putting into evidence Russell's eyewitness testimony, Dr. Steven Hayne's testimony, a forensic pathologist who conducted the autopsy of Florvil, Donnie Carney's testimony of the events after the shootings, and Derrick Jackson's eyewitness testimony at the scene of the crime on I-220. All of this evidence indicated that Smothers shot and killed Florvil. Furthermore, several police officers testified who observed the crime scene and questioned Smothers. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a directed verdict.
 B. Weight of the Evidence
¶ 21. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency.In reviewing this claim, this Court must examine the trial judge's denial of Smothers's motion for a new trial. Jones v. State,635 So.2d 884, 887 (Miss. 1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State,585 So.2d 693, 695 (Miss. 1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's.Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Smothers's motion for a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.
V. WHETHER THE TRIAL COURT ERRED BY NOT GIVING SMOTHERS'SREQUESTED CAUTIONARY JURY INSTRUCTION REGARDING RUSSELL'STESTIMONY
¶ 22. Smothers claims that the trial judge erred in denying his request for a cautionary instruction with regard to the testimony of Carney. Proposed defense instruction D-14 read as follows: *Page 787 
 You have heard testimony from Donnie Carney who was charged with Quincy Smothers as a co-defendant or accomplice. You are instructed by the Court to consider the testimony of Donnie Carney with great caution and suspicion.
The rule regarding the grant of a cautionary instruction for accomplice testimony is discretionary. Wheeler v. State,560 So.2d 171, 172-75 (Miss. 1990). To determine whether there was error, the appellate court should consider (1) whether there was accomplice testimony and (2) if that testimony was corroborated.Green v. State, 456 So.2d 757 (Miss. 1984). An accomplice is a person who is implicated in the commission of the principal crime.Brewer v. State, 725 So.2d 106, 124 (¶ 84) (Miss. 1998). An accessory after the fact is a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, or convicted. Chase v. State, 645 So.2d 829 (Miss. 1994).
¶ 23. The disputed jury instruction characterized Carney as either a co-defendant or an accomplice of Smothers, even though Carney was only charged as an accessory after the fact which was later dismissed. A cautionary instruction about accomplice testimony is not required unless there is a reasonable inference that the witness is an accomplice. Since Carney was neither an accomplice nor a co-defendant and Smothers failed to present any evidence to the contrary, the cautionary instruction requested was correctly denied, and this assignment of error is without merit.
VI. WHETHER THE TRIAL COURT IMPROPERLY LIMITED SMOTHERS'S RIGHT TOCROSS-EXAMINE THE STATE'S WITNESS
¶ 24. Mississippi Rule of Evidence 613 states:
 (a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
 (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
¶ 25. Rule 613(b) expressly requires that the witness have an opportunity to admit, deny, or explain making the inconsistent statement. Only after that opportunity may extrinsic evidence be introduced to show the inconsistency and even then, the extrinsic evidence may only be introduced through specified means. Ellis-Staton , Mississippi Evidence Rule 613(b) (3d ed. 1995).
¶ 26. Rule 613 (a) requires that the State be shown the prior statement that the defense contemplates using to impeach a witness, if requested. Although Smothers did not proffer the contents of the report, it is likely that the report would have contained a statement by Officer Parker about something Russell told him. Since Smothers failed to proffer the evidence he wished to offer, he failed to properly preserve the question for appeal. Under Rule 103(a)(2), error cannot be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and in a case where a ruling excludes evidence, the substance of the evidence was not proffered or was apparent from the context of the question. By failing to follow the procedure in Rule 613 (a) and by failing to make an offer of proof, Smothers has failed to properly preserve this assignment of error.
¶ 27. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTIONOF MURDER AND *Page 788 SENTENCE TO SERVE LIFE IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OFTHIS APPEAL ARE TAXED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, COLEMAN,IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
[1] Now Rule 3.12 of the Uniform Circuit and County Court Rules.