[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 72 
¶ 1. On March 19, 1999, Johnny Brown, Jr., along with his nephew Reginald Brown, were jointly indicted by the Pike County grand jury for the burglary of a house owned by Amanda Carr. Additionally, Johnny was indicted on the charge of possessing a firearm as a previously convicted felon. The indictment was subsequently amended so as to charge Johnny as a habitual offender. Johnny was tried on June 13, 2000, and the jury found him guilty on both counts. The trial judge sentenced him to a term of life imprisonment without the benefit of parole. Additionally, Johnny was fined $10,000. Brown, aggrieved by the judgment, appeals the following issues:
 I. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO ADMIT TESTIMONY REGARDING JOHNNY'S SPECIFIC PRIOR BAD ACTS.
 II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO USE REGINALD BROWN AND TOMMY SQUIRES AS WITNESSES.
 III. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
 FACTS
¶ 2. On February 14, 1999, Johnny and Reginald Brown traveled from Hinds County, Mississippi to Copiah County, Mississippi where they cleaned the graves of family members. After cleaning the graves, the men proceeded to Pike County. While in Pike County, Johnny became ill. Johnny claimed that Reginald dropped him off at an abandoned cabin.
¶ 3. The same day, Amanda Carr's house, located on Muddy Springs Road in Pike County, was burglarized. Missing from her house was a knife collection, gun collection, VCR, chain saw, weed eater, nine gallons of shelled pecans, and a Nintendo video game machine. All of this property was subsequently recovered after law enforcement, following a high speed *Page 73 
chase, stopped a white GMC van. The occupants of the van were Johnny and Reginald Brown.
¶ 4. Reginald pleaded guilty to accessory-after-the-fact to burglary and testified against Johnny. Reginald stated that he never left Johnny alone. Instead, Reginald testified that he pulled the van near an abandoned house so that Johnny could relieve himself. Reginald testified that both of them then went to the Carr residence, broke into the house, and stole the property in question.
¶ 5. Johnny took the witness stand and denied having been involved in the burglary. Johnny stated that Reginald acted alone. He claimed that he could not have participated in the burglary because Reginald had left him behind at the abandoned house. Johnny denied knowing that there was stolen property in the back of the van and challenged the State's claim that he was in possession of a gun. Nonetheless, the jury found Reginald to be more believable than Johnny and rendered a verdict of guilty against Johnny for burglary and the possession of a gun by a convicted felon. The trial judge then denied Johnny's motion for judgment notwithstanding the verdict or, in the alternative, a new trial.
 I. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO ADMIT TESTIMONY IN REGARD TO JOHNNY'S SPECIFIC PRIOR BAD ACTS
¶ 6. During cross-examination, the State questioned Johnny about his prior convictions, including the possession of cocaine and three convictions for attempted rape. Additionally, the State questioned Johnny about items that were found in his place of residence, most of which had been reported stolen from previous burglaries. Johnny objected to the questions, citing Mississippi Rules of Evidence Rule 404(b). The trial court held that Johnny had opened the door to the introduction of past bad acts. Furthermore, the court stated that the evidence of other burglaries found in Johnny's residence rebutted Johnny's testimony that he did not commit any burglaries by demonstrating motive, intent, plan, identity and knowledge. The court then conducted a balancing test to ensure that the prejudice did not outweigh the probative value of the evidence and instructed the jury that the evidence was to be used to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and could not to be considered in determining whether Johnny was guilty on the charges in the cause subjudice. Johnny now argues that this evidence was highly prejudicial and introduced for the sole reason of allowing the jury to infer that Johnny, based on his prior criminal behavior, must have burglarized Amanda Carr's residence.
¶ 7. Before evidence is admitted at trial, it must first be relevant. Stromas v. State, 618 So.2d 116, 118 (Miss. 1993) (citing M.R.E. 401). The admissibility and relevancy of the evidence are within the discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal.Reynolds v. State, 784 So.2d 929, 932 (¶ 7) (Miss. 2001). As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference. Johnston v. State, 567 So.2d 237, 238 (Miss. 1990). Additionally, "the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account."Jackson v. State, 594 So.2d 20, 25 (Miss. 1992).
¶ 8. During direct examination, Johnny testified that the State attempted to strike a deal with him in exchange for information *Page 74 
regarding unsolved burglaries in Lincoln and Copiah County. Johnny claimed that he "had no awareness of" any burglary, including the one pertaining to the Carr residence. Likewise, Johnny testified that he had nothing to hide about his past and invited the State to bring up specific instances from the past where he had broken the law.
¶ 9. Rule 404(b) requires the trial judge to exclude evidence of previous bad acts where the introduction of such evidence is intended to show that the defendant acted in conformity therewith. M.R.E 404(b); seealso Simmons v. State, 813 So.2d 710 (¶ 30) (Miss. 2002). However, Rule 404(b) contains an exception to the general rule, stating that evidence of other wrongs, crimes, or acts "may . . . be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). In the case sub judice, the State questioned Johnny about evidence linking him and the white van to other recent, unsolved burglaries. This evidence, including items still in the vehicle that had been recently stolen from the Hazlehurst chief of police, rebutted Johnny's assertions that he had nothing to do with burglaries in the area, including the burglary of Amanda Carr's residence. Evidence linking Johnny and the white van to the recent burglaries in the same area demonstrated that Johnny, contrary to his unyielding denial, was a habitual burglar and that his possession of Carr's property was neither mistake nor accident. The evidence challenged the credibility of Johnny's testimony and contradicted much of what he stated on the witness stand.See Scott v. State, 796 So.2d 959, 967 (¶ 26) (Miss. 2001). Likewise, several law enforcement officers testified that they had been on the lookout for a white van that had been involved in several recent burglaries in the area. Therefore, the presence of Johnny inside the white van and the presence of the fruits of several other burglaries inside the vehicle as well as Johnny's home established his identity as the man who, along with Reginald, used the white van to lug away items belonging to Amanda Carr. The trial judge operated within the confines of Rule 404(b) by permitting evidence linking Johnny to unsolved burglaries and giving the jury a limiting instruction as to the use of the evidence; therefore, Johnny's argument is without merit.
 II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO USE REGINALD BROWN AND TOMMY SQUIRES AS WITNESSES?
 A. Reginald Brown
¶ 10. The record reflects that the State listed Reginald Brown as a witness and furnished the list to defense counsel prior to trial. Included within the list was a synopsis of Reginald's statement and the transcript of an interview conducted by the State. Approximately two weeks prior to the trial, the State began to doubt Reginald's credibility and hinted to defense counsel that it would not call Reginald as a witness. Regardless, the State called Reginald to testify; defense counsel objected, arguing that it had relied upon the State's assertion that Reginald would not be called in deciding how to defend against the charges.
¶ 11. Rule 9.04 of the URCCC provides us with the appropriate legal context for this issue, stating:
 A. the prosecution must disclose to each defendant or to defendant's attorney . . . the following which is in the possession, custody, or control of the State, the existence of which is known or *Page 75 
by the exercise of due diligence may become known by the prosecution:
 1. Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial . . . ;
 2. Copy of any written or recorded statement of the defendant and the substance of any oral statement made by the defendant. . . .
URCCC 9.04(A)(1)(2). It is undisputed that Reginald had been listed as a witness for the State several weeks prior to the trial; likewise, the substance of his statement, including inculpatory statements made by Johnny to Reginald, was furnished to Johnny's attorney. These actions alone demonstrate that the State acted in conformity with the procedures set out in Rule 9.04 and the testimony of Reginald caused no unfair surprise. See Hubbard v. State, 437 So.2d 430, 438 (Miss. 1983) (noting that trial court will not be reversed for allowing the testimony of a previously undisclosed witness absent unfair surprise).
¶ 12. The trial court also ruled that Johnny was not prejudiced by the decision to permit Reginald to testify. Johnny complained that his defense would have been different had he known that Reginald Brown would testify. Specifically, Johnny claims that he would have called experts to show that the fingerprints found at Amanda Carr's residence did not match his. However, the presence or absence of fingerprints had nothing to do with the testimony provided by Reginald. Moreover, the State stipulated that the fingerprints found at the crime scene had not been produced by Johnny; therefore, any additional evidence pertaining to the absence of Johnny's fingerprints would not have furthered his defense in any way.
B. Tommy Squires
¶ 13. During a search of Johnny's apartment, officers found a Hazlehurst police officer's badge. During both direct and cross-examination, Johnny claimed that the badge had been in a duffel bag that he had purchased; he asserted that he was unaware of the bag's contents as he had not had the opportunity to open it. On rebuttal, the State called Tommy Squires, an officer for the Mississippi Highway Patrol. Johnny objected, arguing that Squires's testimony would be cumulative. The State responded, noting that Squires would specifically testify that the Hazlehurst police officer's badge was resting on a dresser in plain and open view, instead of a duffel bag as Johnny had earlier claimed.
¶ 14. The "purpose of rebuttal testimony is to explain, repel, counteract or disprove evidence by the adverse party." Williams v.State, 539 So.2d 1049, 1051 (Miss. 1989). The determination of whether evidence is properly admitted as rebuttal evidence is within the trial court's discretion. Wakefield v. Puckett, 584 So.2d 1266, 1268 (Miss. 1991). As such, we will not reverse the trial court's decision unless the introduction of the rebuttal evidence clearly demonstrated an abuse of discretion. McGaughy v. State, 742 So.2d 1091, 1094 (¶ 6) (Miss. 1999).
¶ 15. The State did not call Squires during its case in chief because at that point Johnny had not opened the door to his past crimes. However, once Johnny testified, the importance of the rebuttal evidence and Squires's testimony became apparent. Squires testified that he found the police officer's badge on top of Johnny's dresser. This statement rebutted Johnny's testimony that he had no knowledge of the police badge and that it had been recovered from an unopened duffel bag. Much like the introduction of Johnny's prior bad acts, the rebuttal challenged *Page 76 
and ultimately undermined the credibility of his testimony. As such, we find that the trial judge did not abuse his discretion in allowing Squires to testify.
 III. WAS THE JURY'S VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 16. Johnny argues that there was no evidence, with the exception of the testimony offered by Reginald, that indicated that he was in possession of a firearm. Johnny concedes that the truck contained guns; however, he argues that he never knew they were in the back of the vehicle. Moreover, Johnny contends that the testimony demonstrates that even if he had knowledge of the guns, there was no way he could physically reach the weapons, as they were located in the back of the truck which was separated by a metal plate from the front of the vehicle.
¶ 17. This Court reviews the weight of the evidence following the trial court's denial of a defendant's motion for a new trial. It is well established that the decision whether to order a new trial rests within the trial court's sound discretion. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). Upon review, we are obligated to accept all evidence supporting the verdict as true and will reverse only where the trial court has clearly abused its discretion by denying the defendant's request for a new trial. Herring v. State, 691 So.2d 948, 957 (Miss. 1997). "The proper function of the jury is to decide the outcome in this type of case, and the trial court should not substitute its own view of the evidence for that of the jury's." Smothers v. State, 756 So.2d 779, 786 (¶ 21) (Miss.Ct.App. 1999). Ultimately, a motion for a new trial should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Wetz v. State, 503 So.2d 803, 812 (Miss. 1987).
¶ 18. Applying the legal standard cited above and considering the testimony given at trial, the evidence presented was sufficient to support the jury's verdict. The Mississippi Supreme Court has stated that "[j]urors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness." Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). Furthermore, "[t]he testimony of a single uncorroborated witness is sufficient to sustain a conviction, even though there may be more than one person testifying to the contrary." Williamsv. State, 512 So.2d 666, 670 (Miss. 1987). This general rule, although applicable, is cautiously applied in cases where the witness is an accomplice to the crime. See Mason v. State, 429 So.2d 569, 571 (Miss. 1983); James v. State, 756 So.2d 850, 851 (¶ 3) (Miss.Ct.App. 2000). When Johnny was arrested, the guns were found in the back of the white van. Additionally, Reginald, the sole accomplice to the crime, testified that Johnny broke into Carr's house and removed several pieces of property. Reginald admitted stealing both the chainsaw and weed eater; however, he stated that Johnny stole the gun and knife collection. Prior to deliberations, the trial judge specifically instructed the jury that they should only consider Reginald's testimony if they believed it was "reasonable and not improbable, self-contradictory or substantially impeached. . . ." The jury returned from deliberations, finding that Johnny had been in possession of the guns later found in the rear of the truck. Given the court's precautionary instruction and the testimony supplied by Reginald, we conclude that the trial court did not sanction an unconscionable injustice by refusing to grant Johnny's motion for a new *Page 77 
trial. Furthermore, the fact that Johnny could not reach for the weapon is irrelevant. Reginald testified that Johnny stole the guns from Amanda Carr's house; as such, Johnny was in constructive possession of the guns in the back of the van. See Sumrall v. State, 758 So.2d 1091, 1096 (¶ 17) (Miss.Ct.App. 2000). This argument is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OFCONVICTION AS AN HABITUAL OFFENDER OF COUNT II BURGLARY OF A DWELLING ANDCOUNT IV POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OFLIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS AND FINE OF $10,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL AREASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, MYERSAND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.