883 So.2d 583 (2004)
Timothy Allen WOODS, Jr. a/k/a Timothy Allen Woods, Sr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00759-COA.
Court of Appeals of Mississippi.
April 27, 2004.
Rehearing Denied July 20, 2004.
Certiorari Denied October 7, 2004.
*585 Carol L. White-Richard, Stephen Nick, Greenville, attorneys for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
*586 McMILLIN, C.J., for the Court.
¶ 1. Timothy Allen Woods was convicted on both counts of a two-count indictment charging him with aggravated assault and armed robbery. The two counts arose out of a single incident in which it was alleged by the State that Woods deprived his victim of certain personal property by threatening her with a knife and that he subsequently inflicted actual injuries on the victim's person by cutting her about the throat with the knife. Woods's appeal raises five issues in the following order: (a) he contends that the State's proof on the robbery count was insufficient as a matter of law to sustain a conviction; (b) he claims that the trial court improperly limited his defense counsel in its efforts to impeach the victim's credibility through showing her history of drug use; (c) he contends that the evidence was insufficient as a matter of law to sustain his conviction on the aggravated assault count; (d) alternatively, he contends that the verdict on both counts was against the weight of the evidence, entitling him to a new trial; and (e) he contends that the prosecuting attorney's remarks during summation constituted an improper comment on Woods's post-arrest silence.
¶ 2. Woods, in addition, has filed a pro se supplemental brief in which he claims that his representation at trial fell below constitutionally-mandated standards of competence, thus effectively denying him the right to representation by counsel afforded him under the Constitution of the United States.
¶ 3. We find the issues presented to be without merit and affirm the convictions and resulting judgment of sentence.

I.

Facts
¶ 4. The facts that follow are taken from the testimony of witnesses for the prosecution. Woods, in the company of a friend named Robert Pluard, was riding in a vehicle along with the victim, Lisa Latham, on the day in question. They were drinking beer, smoking marijuana, and smoking crack cocaine. After reaching the conclusion that Latham had a quantity of crack cocaine on her person that she was not sharing with the others, Woods forced her at knife-point to empty the contents of her pockets and assumed possession of those contents. Woods subsequently purposely cut Latham about the throat. Latham claimed that she pretended to be unconscious after she was cut and that Woods and Pluard dragged her body into a field and left her, apparently satisfied that they had killed her. In that regard, Latham testified that Pluard cut her about the neck after Woods had inflicted her initial injuries.
¶ 5. After Woods and Pluard left, Latham wrapped her throat wounds with her shirt and managed to walk to a nearby house. Medical aid was summoned, and law enforcement officers were notified. Pluard, who testified as a witness for the prosecution, offered testimony seeming to indicate that Latham may have been carrying rocks of crack cocaine in a cigarette pack and that the cigarette pack was obtained by Woods from her pockets but was later lost in the confusion of moving Latham's inert body. As a result, Woods and Pluard returned to the location for the purpose of searching for the packet. Rather than finding the cigarette pack, they discovered that Latham's body was gone. As they attempted to depart the scene, they encountered law enforcement officers responding to information provided by Latham. Woods and Pluard attempted to flee in their vehicle, and when their escape route appeared blocked, Woods departed the vehicle and fled on foot. He was ultimately apprehended.
*587 ¶ 6. Woods, testifying in his own defense, admitted to the episode of drug and alcohol consumption in the company of Pluard and Latham, but claimed that he had been dropped off at his home by Pluard while Latham was still in the vehicle. Woods testified that Pluard came back about forty-five minutes later by himself, and they resumed their efforts aimed at "getting high." When law enforcement officers attempted to stop the vehicle, Pluard "freaked out" and attempted to flee. Woods explained his own flight on foot as being driven by his fear that he might be subject to arrest for previous offenses committed years earlier. Woods could offer no plausible explanation for why Pluard, as an alleged accomplice, and Latham, as the crime victim, would have coordinated their stories to falsely implicate him as a participant in the events.
¶ 7. The jury returned a verdict of guilty on both counts of the indictment, and this appeal followed.

II.

The Sufficiency of the Evidence of Guilt of Armed Robbery
¶ 8. If, at the conclusion of all the evidence, the State has failed, as a matter of law, to present probative evidence establishing each of the essential elements of the charged crime, the trial court is obligated, upon proper defense motion, to direct a verdict of acquittal. George v. State, 812 So.2d 1103, 1106-07(¶ 14) (Miss.Ct. App.2001). After the jury has returned a verdict of guilty, the same issues may be raised by the defense in a JNOV motion. If the trial court ultimately concludes that the verdict should stand, the defendant may assert that decision as error on appeal. In that situation, the appellate court reviews all the evidence in the light most favorable to upholding the verdict and with the view that the jury, sitting as factfinder, drew all inferences consistent with guilt that could reasonably be drawn from the proof. Id. Only if the appellate court, after reviewing the evidence on that basis, is convinced that the evidence on one or more essential elements of the crime was so deficient that a reasonable juror fairly viewing the evidence could only reach a not guilty verdict may the appellate court disturb the result obtained in the trial court. Id.
¶ 9. Woods, in his argument, focuses on the requirement in the armed robbery statute that requires as an element of the crime that the defendant "shall feloniously take ... from the person ... the personal property of another . . . ." Miss. Code Ann. § 97-3-79 (Rev.2000) (emphasis added). Woods points out that the only evidence offered by the victim was a statement that "[a]fter I slumped down that's when they proceeded to go through my pockets." Woods concedes that his alleged accomplice, Pluard, testified that Woods had, in fact, taken the contents of Latham's pockets. However, Woods points out that Pluard testified that Woods demanded that Latham empty her pockets and that she complied before her neck was cut whereas Latham indicated that her pocket contents were not disturbed until after she had been injured and was feigning unconsciousness. Woods also points out that neither witness testified as to what the contents of the pockets might have been, thus rendering it impossible to determine that she was robbed of anything of value.
¶ 10. There is no requirement in the armed robbery statute that the property taken have any particular value. Clay v. State, 811 So.2d 477, 479(¶ 8) (Miss.Ct. App.2002). Rather, the only requirement is that it be personal property not belonging to the accused. Miss.Code Ann. § 97-3-79 *588 (Rev.2000). While the evidence in this case may fairly be classified as sparse, when it is viewed in its entirety, it is the view of this Court that the evidence would fairly permit an inference that Woods purposely took from Latham a cigarette pack believed to contain contraband crack cocaine rocks through the use of a deadly weapon in the form of a knife. The fact that the package was never recovered or that Latham never testified directly that she possessed a cigarette pack containing crack cocaine rocks is of no particular relevance, since, even if shown beyond question that Woods's expectations of discovering cocaine in the package obtained from Latham went unrealized, the package itself would constitute personal property for purposes of the statute. In that light, it is important to remember that robbery is not a crime against property but is a crime against the person. Towner v. State, 812 So.2d 1109, 1114(¶ 23) (Miss.Ct.App.2002). As such, its primary purpose is to protect the safety and welfare of individuals from the prospect of violence against their persons, albeit that the violence may occur as part of a scheme to deprive that person of his property. Thus, the underlying purpose of the robbery statutes is not diminished or trivialized by the fact that the property ultimately taken may have been of negligible worth or substantially less value than what the robber had hoped for.
¶ 11. Though not directly raised in this appeal, it is also appropriate to note at this point that although, for some purposes under the law, contraband goods such as illegal narcotics are declared to be of no value to the possessor such that the possessor has no property interest in such goods, that rule does not apply for purposes of robbery statutes. In 1950, the Mississippi Supreme Court said that "[c]ontraband liquor may be the subject of larceny or robbery." Passons v. State, 208 Miss. 545, 558, 45 So.2d 131, 134 (1950), overruled on other grounds by Simmons v. State, 568 So.2d 1192 (Miss.1990). Along those same lines, the Indiana Court of Appeals recently observed, in a case involving theft of a quantity of marijuana, that there was a "general rule that property illegally held or used can be the subject of a larceny." Say v. State, (1993) Ind. Ct.App., 623 N.E.2d 427, 428.

III.

Limited Cross-Examination
¶ 12. The trial court, after allowing extensive inquiry into the victim's past history of drug and alcohol abuse, finally stopped defense counsel's attempts to elicit from her that, in the past, she had presented herself at a hospital complaining of blurred vision and hallucinations apparently related to narcotic abuse. On appeal, Woods claims that this denied him the ability to effectively probe the witness's credibility.
¶ 13. The trial court enjoys a substantial measure of discretion in controlling the flow of evidence. Austin v. State, 784 So.2d 186, 193(¶ 23) (Miss.2001). Even evidence that might arguably be relevant may be excluded when the trial court concludes that it is cumulative or may cause undue delay in concluding the trial with reasonable dispatch. M.R.E. 403.
¶ 14. This Court has conducted a thorough review of the entire record in this cause. Based on that review, we are satisfied beyond question that the issues of the victim's rather extensive history of drug abuse and the difficulties in her life attributable to that course of conduct were fully developed for the jury, and that the jury had extensive information in that regard to make a reasoned evaluation of the worth of her testimony, which is, of course, one of *589 the fundamental duties of the jury. Winters v. State, 449 So.2d 766, 771 (Miss. 1984). We seriously doubt that permitting defense counsel to attempt to further develop that aspect of the victim's character, as an indicator of her ability to accurately and truthfully relate past events, would have contributed in any meaningful way toward assisting the jury in completing its duties. We find this contention to be without merit.

IV.

Sufficiency of the Evidence of Assault
¶ 15. Woods's attack on the sufficiency of the evidence to sustain his conviction of the aggravated assault charge can best be summarized by quoting the following assertion from his brief: "The appellant, Woods, was convicted of aggravated assault based purely on the testimony of co-defendant, Pluard, and the victim, Latham." He then points to perceived discrepancies in the victim's testimony and her earlier statements, relating, not to whether Woods cut her with a knife, but to the question of whether Pluard also cut her with a knife or other sharp instrument.
¶ 16. The jury sits as trier of fact and is charged with the duty of determining what weight and worth to afford the testimony of the various witnesses. Id. It is the obligation of defense counsel to test the credibility of adverse witnesses through any number of long-recognized methods that include pointing out prior inconsistencies in reports of the same incident made by the witness. Ivy v. State, 764 So.2d 476, 478(¶ 4) (Miss.Ct.App.2000). However, even an unequivocal showing that a witness has related a version of events at some earlier time substantially at variance with that offered at trial does not necessarily destroy the evidentiary value of the witness's in-court testimony. It is simply a matter for the jury to consider when it evaluates the probative value of the witness's version of events related at trial. Id.
¶ 17. There can be no doubt that the uncorroborated testimony of an accomplice, if found credible by the jury, is sufficient as a matter of law to sustain a verdict of guilty. Brown v. State, 825 So.2d 70, 76(¶ 17) (Miss.Ct.App.2002). In this case, the jury had the benefit of two witnesses having no apparent connection who both confirmed that Woods inflicted serious injuries on the victim by cutting her with a knife. The fact that no demonstrative evidence directly linking Woods to the incident was presented does not, of itself, suggest that the testimony of these two witnesses was insufficient to support a conviction. The jury, as evidenced by its verdict, found these witnesses to be more credible than Woods. We can find no basis in the record to disturb the jury's verdict.

V.

Denial of a New Trial
¶ 18. Alternatively, Woods argues that the evidence, when viewed in its entirety, was such that a verdict of guilty was so against the weight of the credible evidence that to permit the verdict to stand would constitute a manifest injustice. He makes no additional argument in support of this contention beyond adopting by reference his arguments attacking the sufficiency of the evidence. The trial court, in considering a new trial motion on this ground, has some measure of discretion since it involves a somewhat subjective evaluation of the probative worth of conflicting evidence. Woods points to no evidence tending to exonerate him other than his own testimony, which was to some extent implausible on its face.
*590 ¶ 19. In an appeal from a decision to deny a new trial motion on the ground that the verdict was against the weight of the evidence, we are charged to review all of the evidence in a light most favorable to upholding the verdict. Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002). Only if we are convinced that the denial of the motion constituted an abuse of discretion and that denial of a new trial would work a manifest injustice to the defendant may we intercede and set aside the trial court's ruling. Id.
¶ 20. In this case, there was ample evidence of guilt from the testimony of two witnesses having substantially different postures in the case-one being an alleged accomplice and the other being the victim. Both events are related and plainly implicate Woods in the crimes. The only counterbalancing weight was the testimony of Woods himself, which we do not find to have such plainly-evident persuasive power as to lead us to the conclusion that the trial court erred in denying the new trial motion.

VI.

Reversible Error in the Prosecution's Summation
¶ 21. Woods suggests that a portion of the prosecuting attorney's summation constituted an impermissible comment on the fact that he had exercised his Fifth Amendment right against self-incrimination in the period following his arrest. The matter being discussed at the time involved Woods's assertion during cross-examination that he had, in fact, repeatedly attempted to inform law enforcement officers as to his version of events but that they refused to formally incorporate it into a report or to investigate it to see if it could be independently verified. The prosecutor's assertion was that this scenario seemed highly unlikely and constituted cause to doubt Woods's credibility as a witness on matters directly relating to the crime itself.
¶ 22. Whether these comments, plainly intended as a direct attack on Woods's propensity for truthfulness, could be interpreted as also being an indirect effort to cast Woods in a bad light for exercising his right to remain silent appears, at best, a doubtful proposition. We find, in all events, that we are barred from considering this issue on a procedural basis because there was no contemporaneous objection to the line of argument. Mitchell v. Glimm, 819 So.2d 548, 552(¶ 11) (Miss.Ct.App.2002) (citing Gatlin v. State, 724 So.2d 359, 369(¶ 43) (Miss.1998)). It is plainly the law that such an objection must be offered at a time when, if the contention has merit, the trial court can deal with it by way of curative instruction or admonishment to the jury to disregard the argument and avoid the necessity of a retrial. Id.
¶ 23. In closing, we note that Woods, in his supplemental pro se brief, raises one issue. It is an attempt to circumvent the contemporaneous objection bar to consideration of the prosecution's improper use of Woods's post-arrest silence to prejudice him in the eyes of the jury, and consists of an assertion that his counsel was ineffective in failing to properly object to the State's use of this tactic. Because, as we have already observed, we are of the view that the assertions made in that regard are of doubtful merit at best, and because of the compelling eyewitness testimony implicating Woods in the unfortunate events that led to this indictment, this Court concludes that a claim of ineffective assistance of counsel fails the second prong of the test set out in Strickland v. Washington, from which the Court must be satisfied that, but for counsel's failure, *591 there was a reasonable probability that a different outcome of the trial would have resulted. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Mohr v. State, 584 So.2d 426, 430 (Miss.1991).
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION ON COUNT I FOR ARMED ROBBERY AND ON COUNT II FOR AGGRAVATED ASSAULT AND SENTENCE OF TWENTY FIVE YEARS FOR COUNT I AND TWENTY YEARS FOR COUNT II TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.