# IN THE COURT OF APPEALS OF IOWA

No. 16-1161
Filed April 5, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAZMOND DEANTRA TURNER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Thomas G. Reidel,

Judge.

        A defendant appeals his conviction for conspiracy to commit the forcible

felony of robbery. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

"By any means necessary." That's how Kendale Turner, Jazmond Turner and Keenan Lewis agreed to steal marijuana from Ramon March, according to Kendale's testimony for the prosecution at Jazmond's bench trial.[1] The district court found Jazmond guilty of conspiracy to commit the forcible felony of robbery. On appeal, Jazmond contends the State did not present sufficient evidence to corroborate Kendale's accomplice testimony about the agreement and did not show the agreement was to commit a robbery rather than a theft. Jazmond also argues he cannot be guilty of conspiring to rob Ramon because Ramon could not legally own the marijuana. Because the record contains substantial evidence to prove Jazmond's guilt beyond a reasonable doubt, we affirm.

## I. Facts and Prior Proceedings

Jazmond and Keenan are brothers; Kendale is their cousin. One evening in late August 2015, they were "hanging out" on Pershing Avenue in Davenport. They saw Ramon, who they knew sold marijuana, take something out of his trunk and enter the house where he lived with his father, Raymond March. Kendale recalled discussing with his two companions a plan to take marijuana from Ramon without paying for it. To be sure nothing went wrong and they left the house with the marijuana, they decided Jazmond and Keenan would enter the house to outnumber Ramon while Kendale waited in his silver Chevy Impala to aid the getaway. After leaving his two companions at the March house, Kendale parked near the Sav-A-Lot grocery store a few blocks away.

---

[1] For clarity, we will refer to the defendant and others involved in this appeal by their first names because several people share the same last name.

Raymond was across the street talking with a neighbor as he saw his son go into the house with two young men who pulled up in a Chevy. When the two men came back out, one was carrying several shoe boxes. A few moments later, Ramon emerged from the house and ran toward his father looking scared and saying he had been robbed at gunpoint. As a first instinct, Raymond yelled "drop my son's shit" and started to chase the young men, but he soon gave up. He testified: "I'm sixty years old. I knew I couldn't catch them." Raymond saw the pair run up an alley and get into a silver Impala.

According to Kendale, after he picked up Jazmond and Keenan, they drove to another friend's house with the marijuana stolen from Ramon. A few hours later, they returned to the alley to retrieve three or four pairs of "Jordans" kept in the shoeboxes that Keenan had stashed in a dumpster.

Meanwhile, the Marches called the police to report a robbery. Davenport police officers interviewed both Ramon and Raymond at their home. During the follow-up investigation, the Marches both identified Jazmond and his accomplices from photographic lineups.

In January 2016, the State filed a joint trial information, charging Keenan, Jazmond, and Kendale with robbery in the first degree and conspiracy to commit a forcible felony. The State also charged Jazmond with possession of a firearm as a felon. Jazmond waived his right to a jury trial and was tried jointly with Keenan. In exchange for a plea deal, Kendale agreed to testify for the State at the April 18 bench trial. After hearing testimony from Kendale, Raymond, and several police officers, the district court acquitted Jazmond on the robbery and felon-in-possession counts, but it found him guilty of conspiring to commit the

forcible felony of robbery in violation of Iowa Code section 706.3(1) (2015). Jazmond appeals that conspiracy conviction.

## II.    Scope and Standards of Review

We review Jazmond's challenge to the sufficiency of the evidence for the correction of legal error. *See State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008). We view the record in the light most favorable to the State, and we make all legitimate inferences and presumptions that may reasonably be inferred from the evidence. *See State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). We will uphold the district court's ruling as long as substantial evidence supports it. *See State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Hansen*, 750 N.W.2d at 112.

## III.    Substantial-Evidence Analysis

The district court determined the State's proof met the following elements of conspiracy to commit a forcible felony: (1) Jazmond agreed with one or more people that one or more of them would commit a robbery or attempt to commit a robbery; (2) Jazmond entered the agreement with the intent to promote or facilitate a robbery, which is a forcible felony; (3) Jazmond or another of the conspirators committed an overt act "evidencing a design to accomplish the purpose of the conspiracy by criminal means"; and (4) the others involved in the conspiracy were not law enforcement agents or assisting law enforcement agents. *See* Iowa Code § 706.1.

On appeal, Jazmond attacks the district court's ruling on three grounds: (1) the State presented insufficient evidence to corroborate Kendale's testimony,

(2) the State presented insufficient evidence to prove Jazmond agreed to commit the forcible felony of robbery as opposed to a basic theft, and (3) it is impossible to prove conspiracy to commit robbery when the intent is to take contraband. We will address each of his claims in turn.

**Corroboration of Accomplice.** There is no question that Kendale was an accomplice.[2] Accordingly, the State could not rely solely on his testimony to convict Jazmond. *See* Iowa R. Crim. P. 2.21(3) (providing a person may not be convicted upon the testimony of an accomplice "unless corroborated by other evidence, which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof"). Jazmond contends Kendale's testimony was the only evidence the State presented concerning the existence of an agreement among Jazmond, Kendale, and Keenan.

"Corroborative evidence may be direct or circumstantial." *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997). And it may be a combination of circumstances that allows the trier of fact to reach the conclusion the accomplice's testimony has been sufficiently corroborated. *State v. Nepple*, 211 N.W.2d 330, 332 (Iowa 1973). Further, corroborative evidence need not be strong nor confirm every material fact or element of the crime charged. *State v. Cuevas*, 282 N.W.2d 74, 78 (Iowa 1979).

Here, the testimony of Raymond March—identifying Kendale as the driver and identifying Jazmond and Keenan as the two men who entered his home in

---

[2] "In general, a person is an accomplice if he or she could be charged and convicted of the same offense for which the defendant is on trial." *State v. Barnes*, 791 N.W.2d 817, 823 (Iowa 2010).

August 2015 and then fled carrying his son's shoe boxes—provided sufficient corroboration for Kendale's accomplice testimony. Raymond's testimony regarding the route Jazmond and Keenan took from his house also confirmed Kendale's testimony about the location where the shoes later were retrieved from a dumpster. *See State v. Jennings*, 195 N.W.2d 351, 358 (Iowa 1972) (holding non-accomplices' testimony that established defendant's connection to places where elements of conspiracy occurred was sufficient to corroborate accomplice's testimony defendant was involved in the scheme). Raymond's testimony, which showed the close association and overt actions of the three men involved in the robbery scheme, was adequate circumstantial evidence to corroborate the accomplice testimony regarding Jazmond's connection to the conspiracy. Thus, we reject this claim.

**Agreement to Commit a Robbery.** Jazmond next argues the State's evidence was insufficient to prove an agreement to commit a forcible felony. In his estimation, "[t]he only conclusion that can be reached about the agreement between the co-defendants, if one occurred, was that they would not pay for the marijuana—the basic definition of theft not robbery."

During his testimony, Kendale recalled that when he and his two companions were formulating the agreement to steal from Ramon, they "specifically said" they would use "any means necessary" to obtain the marijuana. Kendale's exchange with the county attorney on direct examination outlined the contours of the agreement, as follows:

> Q. And what was the agreement between you and Jazmond Turner and Keenan Lewis? A. The agreement just was that we were going to rob him for the marijuana, get it by any means, make

sure we—that they come out with the marijuana however you got to come out with it.

Q. And when you say "by any means," that would include keeping Ramon physically from stopping them from removing the marijuana. . . . A. Yes, if needed. However we got to get it, just make sure you come out with the marijuana.

In the district court, the county attorney argued it did not matter whether an assault actually occurred at the March residence if the plan was to commit a theft by any means necessary, including physically stopping the victim from interfering with the unlawful taking. We find Kendale's testimony concerning the explicit terms of their agreement was sufficient to prove Jazmond conspired with him and Keenan to commit a forcible felony.

A conspiracy is an inchoate offense, for which there can be liability even if the object crime is not completed. *See Inchoate Offense*, Black's Law Dictionary (10th ed. 2014) (defining as "[a] step toward the commission of another crime, the step in itself being serious enough to merit punishment"). The agreement among Jazmond, Keenan, and Kendale was to "rob" Ramon of his marijuana. A person commits a robbery if he has the intent to commit a theft and commits an assault upon another "to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property." Iowa Code § 711.1.[3] The three companions agreed to commit acts that, if completed, would have fit the definition of robbery. Even if they had been able to take the marijuana without assaulting Ramon, reaching the agreement to commit an assault if necessary was the essence of the conspiracy offense.

---

[3] Both first- and second-degree robbery fall under the definition of forcible felony. Iowa Code § 702.11(1). The aggravated misdemeanor offense of third-degree robbery was not yet in effect at the time of the crime or trial in this case. *See id.* § 711.3A (effective July 1, 2016).

"[C]onspiracy does not depend on the fulfillment of the agreement, only that there is an agreement." *State v. Ross*, 573 N.W.2d 906, 914 (Iowa 1998). Jazmond is not entitled to relief on this argument.

**Theft of Contraband.** Finally, Jazmond advances the novel argument that Ramon "could not have ownership of the marijuana because it was contraband per se" and "one cannot commit robbery if the intended theft is of contraband per se." Jazmond acknowledges Iowa's theft statute does use the term "owner," but he suggests because contraband cannot be legally possessed, Ramon had no valid ownership interest. *See State v. Ludtke*, 446 N.W.2d 797, 800 (Iowa 1989) (discussing forfeiture law).

The State counters that property, for purposes of the theft and robbery chapters, means "anything of value." *See* Iowa Code § 702.14 (defining property); *see also id.* ch. 711 (robbery), 714 (theft). While contraband may not be legally possessed, the State asserts it nevertheless has value and therefore can be the object of a theft or robbery. We agree contraband may be considered property when prosecuting criminal offenses such as robbery and theft.[4] We have found no jurisdiction that abides by a different rule. *See, e.g., Taylor v. Phillips*, 2016 WL 5678582, at *7 (E.D.N.Y. Sept. 30, 2016) ("New York precedent indicates that marijuana is considered property for the purpose of robbery convictions."); *People v. Dillon*, 668 P.2d 697, 704 n.5 (Cal. 1983)

---

[4] It is not unusual for our appellate courts to analyze criminal cases where marijuana is the item to be taken in a robbery. *See, e.g., State v. Lyle*, 854 N.W.2d 378, 380 (Iowa 2014) (addressing constitutionality of sentence for juvenile who committed second-degree robbery by taking small bag of marijuana); *Fryer v. State*, 325 N.W.2d 400, 406 (Iowa 1982) (finding sufficient proof of attempted robbery where brothers discussed their plans to take the marijuana by force); *State v. Clay*, No. 14-0864, 2015 WL 4935606, at *4 (Iowa Ct. App. Aug. 19, 2015) (finding factual basis for guilty plea to robbery where defendant admitted she went into house to steal marijuana).

("Today the rule is universal that by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals."); *State v. Morant*, 701 A.2d 1, 5 (Conn. 1997) (finding defendant could be convicted of robbery after he took contraband from another person); *Say v. State*, 623 N.E.2d 427, 428 (Ind. Ct. App. 1993) (finding marijuana fit within state statute defining property as "anything of value" because it is "bought and sold daily and hence has value, although its possession is unlawful"); *Woods v. State*, 883 So. 2d 583, 588 (Miss. Ct. App. 2004) (holding rule "contraband goods such as illegal narcotics are declared to be of no value to the possessor such that the possessor has no property interest in such goods" does not apply for purposes of robbery statute); *State v. Dwyer*, 411 N.W.2d 341, 345 (Neb. 1987) (holding marijuana, though contraband, could be the subject of robbery if shown to have "any value whatever"); *State v. Clementi*, 272 N.W. 29, 33 (Wis. 1937) (holding "chattel kept for an unlawful purpose . . . the possession of which is prohibited, may be the subject of larceny" (citation omitted)).

Finding no merit in Jazmond's challenges to the sufficiency of the evidence, we affirm his conspiracy conviction.

**AFFIRMED.**